**Billy Sunday BIRT, Petitioner,**

v.

**Charles N. MONTGOMERY, Warden, Georgia State Prison, Respondent.**

No. 82–8156.

United States Court of Appeals, Eleventh Circuit.

July 11, 1983.

Opinion on Rehearing En Banc Aug. 19, 1983.

---

**7.** *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

John C. Boger, New York City, and Eric G. Kocher, Atlanta, Ga., for petitioner.

Charles E. Brown, Mary Beth Westmoreland, Asst. Attys. Gen., Atlanta, Ga., for respondent.

Before HENDERSON and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

HATCHETT, Circuit Judge:

Billy Sunday Birt, a state prisoner, appeals the denial of his federal habeas corpus petition challenging state convictions for murder, armed robbery, and burglary. Birt contends that he was denied the right to counsel of his choice as guaranteed by the sixth and fourteenth amendments. Because the factfinding procedure employed by the state habeas corpus court did not afford a full and fair hearing on this contention, we vacate the denial of Birt's petition and remand to the district court for further proceedings consistent with this opinion.

### I. Procedural History [1]

On January 31, 1975, a Jefferson County, Georgia, grand jury returned an indictment charging Birt and three others with one count of burglary, two counts of armed robbery, and two counts of murder in connection with the deaths of Reid and Lois Fleming, husband and wife. At the time of indictment, Birt was incarcerated in Illinois on an unrelated federal conviction and did not learn of the indictment until March or April of 1975. He was not transferred to Georgia until shortly before arraignment on June 7, 1975. After a six-day trial in the Jefferson County Superior Court beginning on June 23, 1975, a jury found Birt guilty of all charges and recommended that he be sentenced to death. On June 28, 1975, the trial court imposed two sentences of death for the murder counts, two concurrent life sentences for the armed robbery counts, and twenty years imprisonment for the burglary count. On direct appeal, the Supreme Court of Georgia affirmed the convictions and sentences. *Birt v. State,* 236 Ga. 815,

---

1. The facts of this case are summarized in the published opinion of the Georgia Supreme Court, *Birt v. State,* 236 Ga. 815, 225 S.E.2d 248, *cert. denied,* 429 U.S. 1029, 97 S.Ct. 654, 50 L.Ed.2d 632 (1976). Only those facts that are relevant to the issues presented in this appeal are discussed.

225 S.E.2d 248, *cert. denied,* 429 U.S. 1029, 97 S.Ct. 654, 50 L.Ed.2d 632 (1976).

Birt filed a petition for writ of habeas corpus in the Superior Court of Tattnall County, Georgia. After an evidentiary hearing, that court determined that the constitutional inadequacies of the sentencing phase jury instructions required vacating Birt's death sentences and that a new sentencing hearing be held.[2] All other asserted grounds for relief involving alleged defects in the guilt-innocence phase of Birt's trial were denied. The Georgia Supreme Court upheld the decision of the state habeas corpus court. *Birt v. Hopper,* 245 Ga. 221, 265 S.E.2d 276, *cert. denied,* 449 U.S. 855, 101 S.Ct. 150, 66 L.Ed.2d 68 (1980).

Birt next sought collateral relief in the United States District Court for the Southern District of Georgia and requested an evidentiary hearing. Finding that the state courts accorded Birt a full and fair hearing on all asserted grounds for relief and that none of the statutory exceptions in 28 U.S.C.A. § 2254(d)(1)–(8) applied, the district court presumed the state court's factual findings to be correct. Thus, the district court held no evidentiary hearing. On February 16, 1982, the court entered an order denying habeas corpus relief. *Birt v. Montgomery,* 531 F.Supp. 815 (S.D.Ga.1982). Upon obtaining a certificate of probable cause, Birt timely filed this appeal.

**2.** As of the date of oral argument, no resentencing hearing had been scheduled.

**3.** Title 28 U.S.C.A. § 2254(d) provides that:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

## II. *Issues on Appeal*

Birt raises five issues on appeal. He contends (1) that the factfinding procedures employed by the state habeas corpus court did not afford a full and fair hearing because Georgia law at the time did not recognize the validity of subpoenas issued beyond an 150-mile range of the courthouse, and therefore, crucial witnesses on Birt's behalf, though subpoenaed, failed to attend; (2) that he was denied the right to counsel of his choice as guaranteed by the sixth and fourteenth amendments; (3) that he was denied the effective assistance of counsel because of his appointed lawyer's failure to investigate the population figures of Jefferson County and the percentages of blacks and women on Jefferson County jury rolls; (4) that he was denied the right to a jury pool comprised of a representative cross-section of the community; and (5) that the security measures employed at trial deprived him of an impartial jury and due process in violation of the sixth and fourteenth amendments.

■ The standard of review for habeas corpus petitions filed by state prisoners is that stated in 28 U.S.C.A. § 2254(d).[3] Written determinations concerning factual issues entered after a hearing on the merits by a state trial or appellate court of competent jurisdiction are presumed correct un-

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such fac-

less the petitioner can show that one of the conditions set forth in 28 U.S.C.A. § 2254(d)(1)–(8) exists. *Hance v. Zant,* 696 F.2d 940, 946 (11th Cir.1983). If such a showing is made, the presumption no longer applies and the petitioner has the burden of proving, by a preponderance of the evidence, the facts supporting his substantive federal claim. *Thomas v. Zant,* 697 F.2d 977, 985–987 (11th Cir.1983). If none of the conditions of section 2254(d)(1)–(8) are found to exist, the petitioner must be given an opportunity to rebut the presumption and establish by convincing evidence that the state court was erroneous. *Sumner v. Mata,* 449 U.S. 539, 546, 101 S.Ct. 764, 768, 66 L.Ed.2d 722 (1981); *Hance,* 696 F.2d 940, 946. The presumption of correctness accorded state court findings does not apply to legal findings or to mixed questions of fact and law. *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980).

### III. *Discussion*

#### A. *The Right to Counsel of Choice and the Denial of a Federal Evidentiary Hearing*

In his first substantive argument, Birt alleges that he was denied the right to counsel of his choice by the trial court's refusal to allow him a meaningful opportunity to secure private counsel to prepare his defense. The facts pertaining to this claim, as found by the state habeas corpus court, are as follows. At the time of the indictment on January 31, 1975, Birt was incarcerated in the federal penitentiary in Marion, Illinois, on an unrelated federal conviction. Birt did not learn of the indictment until March or April when he received a telephone call from O.L. Collins, the attorney appointed by the Superior Court of Jefferson County to represent him. In this telephone conversation, Birt strenuously objected to appointed representation and told Collins to inform the Superior Court that upon transfer to Georgia, he would hire an attorney.[4] Birt was not transferred to Georgia until shortly before arraignment on June 7, 1975. At arraignment, with Collins present, Birt continued his objection to appointed counsel and informed the court that, given the opportunity to speak with his wife, he would hire an attorney.[5] Collins's testimony at the state habeas corpus hearing confirms Birt's objections to appointed counsel. The state habeas corpus

---

tual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

4. Birt testified as follows:

Q: Well your best recollection is that he called you in March or April of '75?

A: April or March, somewhere, the best I remember.

Q: What did he tell you at that time?

A: He told me that he had been appointed as my attorney on a murder case in that court.

Q: Did you give him any response?

A: Yeah, I told him, I asked him what in the hell was he talking about, I told him I didn't, if I wanted an attorney when I got down there I would hire me one. I didn't want him for no attorney down there in Georgia.

Q: Well did he say anything in response?

A: Well he said he had been appointed by the Judge and uh, he was my attorney. So I told him to go back and inform the Judge that when they brought me to Georgia for arraignment, I would hire me an attorney.

Q: Do you recall what Mr. Collins said in response to that?

A: He said he, he said he would tell the Judge . . . .

5. Birt's testimony is as follows:

Q: Do you recall how long you spoke with Mr. Collins at the time of the arraignment?

A: I didn't talk to him none. Judge, went before for the arraignment, Judge told me I appointed this man for attorney and I told the Judge I didn't want him, I said I don't want this man for no attorney. I even talked to him on the phone. I told the Judge I didn't want him. All I wanted to do was make a phone call to my wife and I would hire me an attorney.

Q: What did the Judge say in response, do you recall?

court found that Birt objected to appointed counsel at arraignment, but that the trial court exercised its discretion in keeping Collins on the case in the event Birt was unable to retain counsel.

Although incarcerated in Augusta, Georgia, some 200 miles from his family in Marietta, Georgia, Birt and his family succeeded in retaining a private attorney, Eugene Reeves, to represent him at the upcoming trial. According to Collins, he, Reeves, and Birt met for the first time at the Richmond County jail on Sunday night, June 22, 1975, with trial scheduled to begin the next morning. Collins testified that when Reeves revealed his intention to seek a continuance in order to prepare for trial, he advised Reeves that Judge McMillan (who was also the arraigning judge), was unlikely to grant any continuances. Collins testified further that, after independent conversations with both attorneys, Birt decided to keep both of them.[6] Birt's testimony to the contrary was rejected by the state habeas

corpus court.[7] Birt proceeded to trial represented by both Collins and Reeves. The record indicates that Reeves cross-examined the state's principal witness and handled most of the defense, examining Birt and his alibi witnesses.

■ The state habeas corpus court found that Birt voluntarily accepted the assistance of both Collins and Reeves and thereby waived the right to counsel of his choice. This finding was affirmed on appeal. *Birt v. Hopper,* 245 Ga. 221, 223, 265 S.E.2d 276, 278. As discussed above, this finding is entitled to the presumption of correctness unless one of the 28 U.S.C.A. § 2254(d) circumstances applies. Birt contends that section 2254(d)(2) is applicable because, according to Birt, the factfinding procedure employed by the state habeas corpus court was not adequate to afford a full and fair hearing on the right to counsel question. The basis of Birt's argument is the Georgia statute in effect at the time of the habeas

---

A: Judge told me, well he, I appointed this man for your attorney. He is going to be your attorney.

6. Collins's habeas corpus testimony is as follows:

The man had been brought here and I had been appointed and had what I felt like at the time to prepare the case and uh, I didn't feel like the judge would grant a continuance simply on Mr. Reeves not being prepared. So uh, he wondered what I thought would happen then. I said well I think the case is going to be tried, I think either I'll try it with your help or you'll try it with my help, it's just up to Mr. Birt and what he wants to do. So I was sent out of the room and Mr. Birt and Mr. Reeves had a conference and I was brought back, we talked a few minutes and Mr. Reeves was sent out of the room and Mr. Birt and I had a conference and uh, that conference that I had with Mr. Birt at that time concerned how he would go about uh, getting his retainer or money back from Mr. Reeves if I was going to handle the case. I said I have nothing to do with that Mr. Birt, I don't know nothing about that, that's your problem I don't know. We were both called back in and then a serious discussion became as to who would have the mechanics of getting this case tried.... The next morning when we came to court, it was agreed that night to with Mr. Birt's consent, I would be leading counsel so to speak, Mr. Reeves would assist me. So the man would go to

trial with an appointed counsel and as retained counsel both working in his interest. When we came to the courtroom, why I was sitting at the table here, Mr. Birt was between us and Mr. Reeves was to his right.

7. Birt's testimony is as follows:

Q: All right, now, isn't it true that during the, during the trial or prior to the trial that you and Mr. Reeves agreed that even, even though Mr. Reeves had been retained that Mr. Collins would stay on, stay on the case because he knew the people in Jefferson County?

A: No, Mr. Reeves wanted to, wanted to get rid of him.

Q: In other words, if Mr. Collins testified that Mr. Reeves wanted him, that you two agreed that Mr. Collins would be lying, is that what you're saying?

A: Mr. Reeves wanted me to get rid of him.

. . . .

Q: What I'm saying is if Mr. Collins comes in this courtroom and testifies that you and Mr. Reeves agreed to let Mr. Collins stay on, uh, that Mr. Collins is wrong and you're right?

A: No, he would be lying.

Q: All right.

A: I told, I told the Judge, I told Mr. Collins both, I did not want him. Because Mr. Reeves told me that he would do a better job without Mr. Collins. Mr. Reeves told me that. I believe I can do a better job if I don't have this man, but the Judge put him on me, I couldn't get rid of him. I mean, I could not get him off.

corpus hearing which restricted the enforceability of subpoenas to 150 miles from the courthouse where the habeas corpus proceeding is held. Ga.Code Ann. § 38–801(e) (revised and recodified at § 24–10–21 (1982)).[8] This statute prevented Birt from compelling the attendance of Reeves, Birt's retained attorney, at the state habeas corpus hearing. Although he subpoenaed Reeves, Birt could not compel Reeves attendance because his residence in Lawrenceville, Georgia, is more than 150 miles from Tattnall County, Georgia. Consequently, Reeves was outside the range for an enforceable subpoena. Reeves allegedly would have testified to the Sunday night conversation between him, Collins, and Reeves, during which, according to the state habeas corpus court, Birt waived the right to counsel of his choice. The state urges us to decline consideration of Birt's objection to the subpoena range statute because of his failure to challenge the statute on appeal from the denial of the state habeas corpus petition.[9] Notwithstanding this failure, the state claims that the hearing Birt received in state court was full and fair. Because we agree with Birt that the procedural statute prevented a full and fair hearing on the right to counsel of choice question, we hold that it was error for the district court to presume the factual findings entered by the state habeas corpus court to be correct. It is therefore our view that *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), mandates a federal evidentiary hearing on this issue.

■ In *Townsend v. Sain,* the Supreme Court delineated six situations where a federal evidentiary hearing is required even though a state court has previously entered factual findings. One of the situations envisioned by the Court is that presently codified in 28 U.S.C.A. § 2254(d)(2). *See* footnote 3. *Townsend* governs the threshold question of when a federal evidentiary hearing is mandatory while section 2254(d) establishes a presumption of correctness for state court findings unless one of its exceptions is established. *Thomas v. Zant,* at 984; *Guice v. Fortenberry,* 661 F.2d 496, 501 (5th Cir.1981) (en banc). Section 2254(d) also allocates the burdens of proof once a *Townsend* hearing is deemed necessary. *Thomas,* at 984. When one of the statutory exceptions applies, the state's factual findings, while no longer entitled to a presumption of correctness, are not presumed incorrect, nor does the state have the burden of proving that the petitioner is not unconstitutionally confined. "Rather, any presumption of correctness simply drops out of the picture, and the traditional rules as to burden and standard of proof continue." Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1142 (1970) (footnote omitted). Thus, at the *Townsend* hearing, Birt must establish by a preponderance of the evidence that he was denied the right to counsel of his choice. If he

---

8. Ga.Code Ann. § 38–801(e) was amended in 1980 to provide for statewide service of subpoenas. Acts 1980, pp. 70–71.

9. At oral argument, considerable discussion focused on the burden of pleading the fullness and fairness (or lack thereof) of the state court hearing. It is the state's position that the petitioner has the burden of pleading that the state court hearing was not full and fair, and that such a burden is a prerequisite to a federal court's consideration of whether to hold another evidentiary hearing. Birt emphasizes that he is not raising the inadequacy of the state factfinding procedures as a constitutional claim. Rather, he claims that *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), mandates a federal hearing *because of* the inadequacy of those procedures. Birt's federal petition requests the district court, among

other things, to "conduct a hearing at which proof may be offered concerning the allegations of this petition." The state's answer asserted that Birt had a full and fair hearing in state court and requested the district court to decide the case on the state record, without holding an evidentiary hearing. It is our opinion that both parties have pleaded adequately. Birt requested a hearing; the state countered by alleging that the state hearing was full and fair and therefore no federal hearing was necessary. Because we find that Birt has alleged facts sufficient to justify habeas corpus relief and that the factfinding procedures employed by the state habeas corpus court did not afford a full and fair hearing, we conclude that the district court erred in failing to hold an evidentiary hearing.

succeeds in establishing a prima facie case for an unconstitutional denial, the state may rebut the prima facie case by proving, with a preponderance of the evidence, that Birt voluntarily waived his right to counsel of his choice. *See Thomas,* at 985–87.

Our conclusion that the factfinding procedure employed by the state habeas corpus court was not adequate to afford a full and fair hearing on Birt's sixth amendment claim stems from the fact that Reeves, the attorney retained by Birt and his family, could not be compelled to testify at the state hearing. The state brings to our attention the fact that under the Georgia habeas corpus statute, Birt could have obtained the testimony of Reeves by other methods, such as deposition or sworn affidavit. Ga.Code Ann. § 50–127(7) (recodified at § 9–14–48 (1982)). The state habeas corpus court record reflects that Birt did in fact request an opportunity to introduce an affidavit from Reeves when it appeared that he was not going to honor the subpoena. The state habeas corpus court, however, concluded the hearing with a simple notation of Birt's objection.[10]

▇▇▇ Birt offers no suggestion as to what Reeves's testimony would disclose. It can be inferred from the absence of any objections from Birt on the morning of tri-al, and the absence of a motion by Reeves for a continuance, that Birt did waive his right to counsel of his choice and voluntarily chose to proceed to trial with retained and appointed counsel. We choose not to base our holding on such an inference, however, especially when the state habeas corpus hearing resulted in a virtual swearing match. Caution is dictated because the swearing match was between, on the one hand, a convicted felon, and on the other, the attorney appointed to represent him, himself a former district attorney charged in Birt's petition with rendering ineffective assistance. It is not difficult to predict the victor in such a match. In this regard, the sixth amendment, while not providing an absolute right, guarantees a defendant a fair opportunity to secure counsel of his choice. *Powell v. Alabama,* 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). Whether Birt waived this guarantee deserves more inquiry than just Birt's word against Collins's. Because we find that statutory procedures then in force prevented a full and fair inquiry on this issue, *Townsend* directs that an evidentiary hearing be held in federal court. At that hearing, the respective burdens are as discussed above. If it is found that Birt's right to counsel of his

---

**10.** The colloquy at the conclusion of the hearing went as follows:

THE COURT: All right. Are there any evidence in rebuttal?

MR. BOGAR: Your Honor, I'm not sure whether the out of town witnesses have arrived.

THE COURT: All right. Mr. Warden, did Mr. Reeves and who was the other witness?

MR. BOGAR: Mrs. Wages.

THE COURT: Mrs. Wages, are they here? Would you check out there and make sure they are not here. Did they indicate they were coming?

MR. BOGAR: We understood that they were under subpoena but we understand that an hour or two ago they may not have been on the way, suggest they might not get here. Your Honor, at this time we would like to renew our motion on our experts, investigators based on our showing that we've made. We would like to renew our motion for discovery as well to just particularly your Honor, in respect to these two witnesses that didn't arrive that might be appropriate in view of the limited funds of the

Petitioner has had to work with that we be given a short period to put in an affidavit from either of these witnesses the possibility of a counter affidavit by the State.

THE COURT: What does the State wish to say in response?

MR. DUNSMORE: Well, your Honor, these witnesses weren't subpoenaed and, of course, this is all in the discretion of the court. We would oppose, but we will defer to whatever the court will do.

MR. BOGAR: These witnesses are under subpoena.

MR. DUNSMORE: Well I don't know whether the funds were given to them to the question whether it's a valid subpoena or not.

THE COURT: Were funds given to them? And Lawrenceville is more than 150 miles radius.

MR. BOGAR: I believe that's correct. It's more than a 150 miles.

THE COURT: Well the court is going to conclude the hearing but uh, the record will so note the objection made to it. . . .

choice was denied, his convictions must be overturned and a new trial granted.

### B. *Traverse Jury Pool Challenge*

Birt claims that the traverse jury list from which his trial jury was selected substantially underrepresented blacks and women by percentages violative of both the sixth amendment right to a jury pool representative of a fair cross-section of the community and the fourteenth amendment guarantee of equal protection. *See Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). On appeal from the denial of Birt's state petition, the Georgia Supreme Court found that according to Georgia law in effect at the time of trial, the traverse jury challenge was waived for purposes of habeas corpus review due to the failure to assert the challenge prior to trial. The court thus refused to entertain the claim. *Birt v. Hopper,* 245 Ga. 221, 223, 265 S.E.2d 276, 278.[11] The district court entered a similar finding, and, concluding that cause for the failure to object had not been established, refused to reach the merits. *Birt v. Montgomery,* 531 F.Supp. 815, 818 n. 2.

■ Under Georgia law at the time of Birt's trial, "the right to object to the composition of the . . . traverse jury will be deemed waived . . . unless the person challenging the sentence shows in the petition and satisfies the court that cause exists for his being allowed to pursue the objection after the sentence and conviction have otherwise become final." Ga.Code Ann. § 50–127(1) (recodified at § 9–14–42(b) (1982)). To assert a jury composition challenge collaterally in federal court when such right has been waived under state law, *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), requires the petitioner to demonstrate both cause for the failure to

challenge and actual prejudice. Although arising in the context of a challenge to the composition of a grand jury, *Francis v. Henderson* has been applied to traverse jury attacks as well. *See, e.g., Huffman v. Wainwright,* 651 F.2d 347 (5th Cir.1981); *Evans v. Maggio,* 557 F.2d 430, 434 n. 6 (5th Cir.1977); *Cunningham v. Estelle,* 536 F.2d 82, 83–84 (5th Cir.1976). "Absent cause for the procedural default and actual prejudice from the error, principles of comity and federalism prevent federal courts from granting habeas relief to state prisoners whose claim is non-reviewable in state court because of the default." *Washington v. Estelle,* 648 F.2d 276, 278 (5th Cir.), *cert. denied,* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981).

■ Birt's federal petition lacks any discussion on the failure to challenge. In his brief on appeal, Birt argues that, because no evidentiary hearing was held in federal court, he lacked a full opportunity to demonstrate cause and prejudice. Even absent a full hearing, however, Birt claims the following combine to constitute sufficient cause: (i) the denial of the right to counsel of his choice, (ii) his appointed attorney's misunderstanding of jury selection law, and (iii) Birt's non-participation in appointed counsel's decision not to challenge the traverse jury. We reject Birt's contention that the failure to hold a federal evidentiary hearing precluded the opportunity to demonstrate cause and prejudice. Because Birt's federal petition failed to allege any facts which, if proved, would have demonstrated cause and prejudice and therefore would have entitled Birt to relief, the district court was not required to hold an evidentiary hearing on this question. *See Baldwin v. Blackburn,* 653 F.2d 942, 947 (5th Cir.1981), *cert. denied,* 456 U.S. 950, 102 S.Ct. 2021, 72 L.Ed.2d 475 (1982); *Rutledge v. Wainwright,* 625 F.2d 1200, 1205 (5th Cir.1980), *cert. denied,* 450 U.S. 1033, 101 S.Ct. 1746, 68 L.Ed.2d 229 (1981). The alle-

---

11. The state habeas corpus court found that Birt personally relinquished his right to challenge the composition of the grand jury, a finding affirmed on appeal. *Birt v. Hopper,* 245 Ga. 221, 223, 265 S.E.2d 276, 278. Birt apparently acquieses in this finding because he raises no grand jury challenge in his federal petition.

gation concerning appointed counsel's misunderstanding of jury selection law, interpreted properly, is a claim of ineffective assistance. Bare claims of ineffective assistance are insufficient to establish the requisite cause. *Sullivan v. Wainwright,* 695 F.2d 1306, 1311 (11th Cir.1983); *Lumpkin v. Ricketts,* 551 F.2d 680, 682 (5th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977). A *finding* of ineffective assistance, however, may satisfy the cause requirement. As discussed in the next section of this opinion, we make such a determination and find that Birt's appointed counsel (Collins) rendered ineffective assistance due to his deficient investigation of Jefferson County population percentages and their relation to the county traverse jury list. Despite this determination of sufficient cause, Birt is not entitled to substantive relief on this issue because nothing in the record indicates that Birt satisfies the other requirement of *Francis v. Henderson,* that is, that he was actually prejudiced by the failure to challenge. Assuming that the Jefferson County traverse jury pool was composed unconstitutionally, Birt could benefit from such violation only if it worked to his actual and substantial disadvantage. *See United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816, 832 (1982). If challenged prior to trial, a movant is not required to demonstrate prejudice flowing from an unconstitutionally composed jury pool. The prejudice is presumed. *Cf. Rose v. Mitchell,* 443 U.S. 545, 554, 99 S.Ct. 2993, 2999, 61 L.Ed.2d 739 (1979) (challenge to grand jury foreperson on equal protection grounds); *Alexander v. Louisiana,* 405 U.S. 625, 628, 92 S.Ct. 1221, 1224, 31 L.Ed.2d 536 (1972) (challenge to grand jury on equal protection grounds). On collateral attack in federal court, however, when the challenge has been waived under state law, the burden of demonstrating prejudice resulting from underrepresentation is much greater than the presumption accorded the violation when raised pri-

or to trial. *Cf. Frady,* 456 U.S. 152, 164–66, 102 S.Ct. 1584, 1592–93, 71 L.Ed.2d 816, 828–29 (federal prisoner challenging jury instructions for first time in 28 U.S.C.A. § 2255 proceeding); *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977) (state prisoner challenging jury instructions initially in 28 U.S.C.A. § 2254 proceeding). Although difficult to define with precision, an actual and substantial disadvantage—that which must be demonstrated on collateral attack—means something more than disparity in population percentages on a traverse jury list. Because Birt failed to demonstrate anything more than disparity in the full and fair hearing held in the state habeas corpus court on this issue, no federal habeas corpus relief on this ground is warranted.

C. *Assistance Rendered by Appointed Counsel*

Birt challenges as ineffective only one aspect of appointed counsel's representation. He contends that, although cognizant of the fact that prior Jefferson County traverse jury lists had underrepresented blacks and women and that the lists had been recently revised under challenge, appointed counsel nevertheless rendered ineffective assistance in failing to challenge the June 1975 list from which Birt's jury was selected. Birt claims that appointed counsel knew neither the constitutional standards governing jury selection procedures nor the population percentages of blacks and women in the Jefferson County population. Thus, according to Birt, he lacked the mathematical means necessary to assess the representativeness of the traverse jury list and his decision to forego challenging that list was not an informed and tactical one.

Birt's statistics show an absolute disparity of underrepresentation on the June 1975 list of 32.9% for blacks and 17.6% for women, figures which the state does not dispute.[12] The statistics also indicate that tra-

---

12. Census figures reveal that blacks represented 54.5% of the Jefferson County population and that women represented 52.5%. The traverse jury pool was made up of 21.6% blacks and 34.9% women. The actual jury that tried Birt was composed of three white males, five white females, three black males, and one black female.

verse jury pool lists for previous years comprised even fewer blacks and women and therefore involved higher race and gender disparities.[13] Testimony of Jefferson County jury commissioners at the state habeas corpus hearing revealed that potential jurors were occasionally selected by accepting or rejecting names on the county voter registration lists based upon the commissioners personal knowledge of the individuals or their family background. The commissioners acknowledged that they did not obtain population figures for Jefferson County or calculate the proportionate representation of minorities in the general population.[14]

 Birt's statistical evidence appears to establish a prima facie case of unconstitutional composition under both the sixth and fourteenth amendments. The percentage disparities are sufficiently disproportionate to fall within the approximate boundaries delineated in other cases. *See, e.g., Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 532 (1970) (23%); *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954) (14%); *Preston v. Mandeville,* 428 F.2d 1392 (5th Cir.1970) (13.3%). For purposes of the equal protection violation, the subjective judgments of the Jefferson County jury commissioners certainly renders the method of selection susceptible to possible abuse. *See Castaneda v. Partida,* 430 U.S. 482, 497, 97 S.Ct. 1272, 1281, 51 L.Ed.2d 498 (1977). For purposes of the sixth amendment right to a jury of a representative segment of the community, the disparities of blacks and women on Jefferson County traverse jury lists over a period of time indicates systematic exclusion of these two groups.

The state concedes that Collins was aware that an attack could be made on the composition of the traverse jury list. The state maintains, however, that Collins's habeas corpus testimony, which was adopted by the state courts, is conclusive on the decision to forego a jury challenge. Collins testified that no challenge was made because, based upon his discussions with the jury commissioners, he was satisfied with the method of selection, and based upon his investigation and discussion with citizens of the county, he was satisfied with the composition of the jury list. According to the state, Collins's investigation, accompanied by Birt's insistence on proceeding to trial, makes the decision not to challenge one of trial strategy.

The district court characterized Collins's decision not to challenge the traverse jury as a matter of trial strategy. The court noted that Collins filed a motion for change of venue with the stipulation that he would not insist upon such a change if the defense were able to draw a satisfactory jury. Collins testified that he was satisfied with the jury ultimately selected and he accordingly withdrew the change of venue motion.

 The sixth amendment guarantees criminal defendants the right to counsel reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances. *See, e.g., Washington v. Strickland,* 693 F.2d 1243, 1250 (5th Cir. Unit B 1982) (en banc); *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960), *adhered to en banc,* 289 F.2d 928 (5th Cir.), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). Whether counsel

---

**13.** On the September 1970 pool, the statistical disparity of blacks was 42.7%, of women 50.7%. On the January 1972 pool, the disparity of blacks was 42.5%, disparity of women was 49.2%. On the March 1975 pool, disparity of blacks was 40%, disparity of women 47.7%.

**14.** Commissioner McGahee explained the process by which the jury lists were revised to remedy underrepresentation:

A: We took the voter registration list and went right back over it like we did before and just added on, tried in our own mind of the people that we knew from the districts that we

had, to uh, to put what we thought would be an average pro rata share and I thought of blacks, females and teenagers, with no, no given percentage in mind.

Q: Well pro rata share meant what to you?

A: Just as I stated, what we thought would be the logical thing to do.

Q: Okay, what do you mean, what would be the logical thing to do?

A: Well from the voter registration list that we had, we picked people that we though were suitable and would do a good job as a juror.

has rendered adequate assistance is a mixed question of fact and law requiring application of legal principles to the historical facts of the case. *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980); *Young v. Zant,* 677 F.2d 792, 798 (11th Cir.1982). "The district court's conclusion on this issue is entitled to no special deference and this court must review counsel's performance and determine independently whether the constitutional standard was met." *Sullivan v. Wainwright,* 695 F.2d 1306, 1308, *citing Proffitt v. Wainwright,* 685 F.2d 1227, 1247 (11th Cir.1982). Nor is the state court's conclusion on this issue entitled to a presumption of correctness under 28 U.S.C.A. § 2254(d). *Goodwin v. Balkcom,* 684 F.2d 794, 804 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983). Effective counsel need not be errorless counsel, nor should counsel's performance be judged ineffective with the benefit of hindsight. *Mylar v. State,* 671 F.2d 1299, 1301 (11th Cir.1982), *petition for cert. filed,* 51 U.S.L.W. 3079 (U.S. Aug. 10, 1982) (No. 81–2240); *Baty v. Balkcom,* 661 F.2d 391, 394 (5th Cir.1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982). Essential to effective representation, however, is the independent duty to investigate and prepare. *Goodwin,* 684 F.2d 794, 805.

The charge of ineffective assistance directed at Collins implicates the extent of his investigation into a plausible line of defense. *See Washington v. Strickland,* 693 F.2d 1243, 1253. Before making a strategic choice as to which lines of defense to employ at trial, *Washington v. Strickland* teaches that "counsel should ideally perform a *substantial* investigation into each potential line." 693 F.2d at 1253 (emphasis added).

> When an attorney makes a strategic choice after satisfying this rigorous and extensive duty to investigate, courts will seldom if ever find that the choice was the result of ineffective assistance of counsel .... Whereas a strategy chosen after full investigation is entitled to almost automatic approval by the courts, a strategy chosen after partial investiga-

tion must be scrutinized more closely in order to safeguard the rights of criminal defendants.

*Washington,* 693 F.2d at 1254–55. In most cases, strategy employed without a reasonably substantial investigation into all plausible lines of defense will be in part based upon the attorney's professional assumptions regarding the probable success of each line. The courts have found that a reasonable strategic choice based upon reasonable assumptions makes investigation into other plausible lines of defense unnecessary. *See, e.g., Jones v. Kemp,* 678 F.2d 929, 931–32 (11th Cir.1982); *Gray v. Lucas,* 677 F.2d 1086, 1093–94 (5th Cir.1982). Conversely, courts have found counsel ineffective where the failure to investigate is not based upon a reasonable set of assumptions or when those assumptions are not reasonable. *See, e.g., Young v. Zant,* 677 F.2d 792, 798–800; *Kemp v. Leggett,* 635 F.2d 453, 454–55 (5th Cir.1981).

 Collins's habeas corpus testimony convinces us that the decision not to challenge the traverse jury pool, while arguably the result of a reasonably substantial investigation, was not based upon an adequate understanding of the facts and applicable law. Collins testified that, although the revised jury list may not have accurately reflected a cross-section of the community, as far as he was concerned, it was fair. As the statistics indicate, however, in reality it was not. No matter how many times the jury commissioners were interviewed or jury lists examined, without knowledge of the racial and gender composition of Jefferson County, Collins was in no better position than one who had chosen not to investigate the jury pool at all. We cannot say that Collins's assumption that the revised jury list was fair was a reasonable one. Nor can we say that Collins's choice not to challenge the traverse jury was a fully informed strategic decision. We therefore hold the district court's finding to the contrary clearly erroneous. *See Washington v. Strickland,* 693 F.2d at 1257 n. 24; *Beckham v. Wainwright,* 639 F.2d 262, 265–66 (5th Cir.1981). Accordingly, we reject the dis-

trict court's conclusion that Collins rendered effective assistance.[15] A finding of ineffective assistance, however, does not end the inquiry. To prevail on this claim, "the petitioner must show that ineffectiveness of counsel resulted in actual and substantial disadvantage to the course of his defense." *Washington v. Strickland,* 693 F.2d at 1262. To demonstrate the allegedly prejudicial consequences of Collins's failure to challenge the traverse jury pool, Birt introduced the testimony of Dr. John H. Curtis, a university sociologist. Dr. Curtis opined that, based on his study of three South Georgia counties, blacks and women are more reluctant to convict and sentence to death than are whites and men generally.

■ Because both the state courts and the district court found Collins's assistance to be reasonably effective, neither court reached the question of prejudice, an inquiry upon which *Washington v. Strickland* requires there be resolution. Because we are remanding to the district court for further proceedings on the question of Birt's right to counsel of his choice, we deem it appropriate to let the district court, in the first instance, address the issue of prejudice. As a preliminary matter, Birt must be given the opportunity to demonstrate that he suffered actual and substantial detriment because of Collins's ineffective assistance. If Birt can demonstrate actual and substantial detriment, the district court must then give the state the opportunity to demonstrate that, in the context of the entire case, the detriment suffered was harmless beyond a reasonable doubt. *See Washington v. Strickland,* 693 F.2d at 1264.

## D. *Security Measures at Trial*

■ Birt alleges that the security measures employed during trial turned the courtroom into an armed camp of law enforcement officials communicating apparent guilt and imminent dangerousness to the jury. He claims the security was unnecessarily excessive and deprived him of an impartial jury and due process in violation of the sixth and fourteenth amendments.

This claim has been addressed by the state courts in habeas corpus and by the district court. *See Birt v. Hopper,* 245 Ga. 221, 225, 265 S.E.2d 276, 279; *Birt v. Montgomery,* 531 F.Supp. 815, 819–20. In each instance, the court found the measures reasonable and justified in light of threats to the lives of Birt and his co-indictees and reports indicating that Birt would attempt to escape during trial. Both the state courts and the district court found that the state trial judge did not abuse his discretion in approving tight security nor did the measures deprive Birt of a fair trial. Upon review of the state court record, we agree with these findings.[16] While security at Birt's trial was unquestionably stringent, we find no deprivation of constitutional rights.

## IV. *Conclusion*

This case is remanded to the district court for further proceedings to determine whether Birt's sixth amendment right to counsel of his choice was denied, and whether appointed counsel's ineffective assistance caused actual and substantial detriment to the conduct of Birt's defense. If it is determined that Birt was denied the right to

---

**15.** We do not mean to imply that counsel, in order to render constitutionally effective assistance, need investigate *and* challenge jury compositions in every case. We only point out that when such investigation is undertaken, it should be performed with a sufficient degree of background knowledge regarding population percentages and Supreme Court guidelines in this area of law. It is this lack of investigation, coupled with an apparently prima facie case of unconstitutional composition which we find inexcusable in this case.

**16.** The restrictive subpoena range statute discussed in section III.A. of this opinion prevent-

ed the compelled attendance of certain Georgia Bureau of Investigation (GBI) officials subpoenaed by Birt to testify at the state habeas corpus hearing. Birt sought to demonstrate by their testimony that the concern over threats and attempted escapes was unfounded. Because we conclude that the security measures employed were not unnecessarily excessive, we need not address Birt's challenge to Ga.Code Ann. § 38–801(e) (revised and recodified at section 24–10–21 (1982)) as it relates to the GBI officials.

counsel of his choice, the district court is instructed to issue a writ of habeas corpus discharging Birt from state custody subject to the state's right to retry him within a reasonable time. If it is determined that appointed counsel's ineffective assistance caused actual and substantial detriment to Birt's defense at his state trial, and that such detriment was not harmless beyond a reasonable doubt, the district court is instructed to issue a writ of habeas corpus subject to the conditions previously mentioned.

VACATED and REMANDED.

ALBERT J. HENDERSON, Circuit Judge, dissenting.

The majority remands this case for a federal evidentiary hearing for two reasons: (1) that the statutory factfinding procedures prevented Birt from receiving a full and fair state hearing on the issue of his right to counsel of his choice, and (2) that, contrary to the district court's holding, Birt's appointed trial counsel rendered ineffective assistance, and Birt must now have the opportunity to show that he suffered actual prejudice as a result thereof. Because I do not believe that a new hearing is required for either reason, I respectfully dissent.

In *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the United States Supreme Court cited six situations in which a hearing is mandated, one of them being when "the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing." *Id.,* 372 U.S. at 313, 83 S.Ct. at 757, 9 L.Ed.2d at 788. Although that is the basis of Birt's first claim, this case does not fall within that category. In his federal habeas corpus petition, Birt sought an evidentiary hearing but failed to point out any inadequacy in the state court post-conviction hearing which would necessitate new factfinding inquiry.[1]

Birt now belatedly urges that the state process was inadequate because the applicable Georgia statute limited the range of subpoenas to 150 miles from the courthouse, and Birt was thus prevented from compelling his retained trial counsel, Eugene Reeves, to appear at the state habeas corpus proceedings, presumably to testify as to the ineffectiveness of his court appointed lawyer. Ga.Code Ann. § 38–801(e) (revised and recodified as Off.Code Ga.Ann. § 24–10–21 (1982)).[2] In agreeing with Birt, the majority glosses over the critical reason why the subpoena statute did not deprive Birt of a full and fair hearing. The issuance of subpoenas to compel the attendance of witnesses was not the only means available to Birt to secure Reeves's testimony. The statutes expressly provide for proof by depositions and sworn affidavits as

---

1. Birt did not attack the adequacy of the state factfinding procedure until after the district court denied his federal habeas corpus petition. He failed to allege any particular need for a new hearing. Similarly, where a petitioner belatedly contended that he would have submitted new evidence if granted a federal hearing, but where he neglected to explain why he had not procured the evidence prior to or during the hearing, this court upheld the denial of a plenary evidentiary hearing. *Smith v. Balkcom,* 660 F.2d 573, 575 n. 2 (5th Cir. Unit B 1981), *aff'd on reh'g,* 671 F.2d 858 (5th Cir. Unit B 1982), *stay granted pending application to Supreme Court,* 677 F.2d 20 (5th Cir. Unit B), *cert. denied,* —— U.S. ——, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982).

2. Although the amended version of the Georgia statute extends the subpoena power statewide, the previous 150-mile limit hardly seems unduly restrictive. By comparison, Fed.R.Civ.P. 45(e)(1)—which stands unchallenged—restricts service of a civil federal subpoena to "any place within the district, or at any place without the district that is within 100 miles of the place of the hearing, ... or at a place within the state where a state statute or rule of court permits ...".

The Supreme Court of Georgia rejected the argument that the applicable code provision unconstitutionally infringed on a habeas corpus petitioner's right of compulsory process to obtain witnesses, holding that the statute did not operate to deprive him of a full and fair habeas corpus hearing. *Pulliam v. Balkcom,* 245 Ga. 99, 263 S.E.2d 123, *cert. denied,* 447 U.S. 927, 100 S.Ct. 3023, 65 L.Ed.2d 1121 (1980). The sixth amendment right of a criminal defendant to secure witnesses' testimony is inapplicable to habeas corpus proceedings, which are civil in nature. *Id.,* 263 S.E.2d at 125; *Krist v. Caldwell,* 230 Ga. 536, 198 S.E.2d 161 (1973).

well as oral testimony. Ga.Code Ann. § 50–127(7) (recodified as Ga.Code Ann. § 9–14–48 (1982)).[3] Birt's habeas counsel was aware from the start that Reeves's attendance could not be compelled because he resided in Lawrenceville, Georgia, more than 150 miles from the hearing in Reidsville, Georgia. Thus, although he had no realistic belief that Reeves would voluntarily appear, Birt neglected to procure Reeves's testimony by affidavit or deposition. Instead, he waited until the close of the hearing to suggest—almost as an afterthought—that he be permitted to obtain and submit an affidavit. His request was untimely, for the pertinent statute clearly requires that affidavits shall be served on the opposing party at least five days in advance of the hearing. Ga.Code Ann. § 50–127(7) (recodified as Off.Code Ga.Ann. § 9–14–48(b) (1982)). Therefore, the state habeas corpus judge did not err in concluding the proceedings without the delayed submission of an affidavit.[4] A party who ignores discovery options should not be permitted to blame the statutory factfinding procedures for any perceived inadequacies at the evidentiary hearing. Any shortcoming lies not in the state's statutory procedure, but rather, in the party who neglected to avail himself of routine remedies.

3. The court routinely receives such evidence in habeas corpus proceedings. *Harper v. Harper,* 241 Ga. 19, 243 S.E.2d 74 (1978); *Phillips v. Hopper,* 237 Ga. 68, 227 S.E.2d 1 (1976).

4. Birt cannot be heard to complain that there was insufficient time to depose the witness prior to the hearing. His attorneys had already obtained one continuance, and they submitted a flurry of discovery motions within two weeks of the rescheduled hearing.

5. The majority correctly notes the conflict in the testimony of Birt and Collins with respect to the facts leading up to the joint representation of Birt by Reeves and Collins. It is also true that the state habeas corpus court favored Collins's version of these events. Even so, the majority would extend to Birt another opportunity to do what he should have done in the first instance.

6. I would also note that even if Birt had assigned error based on the other grounds in

Furthermore, as the court stated in *Guice v. Fortenberry,* 661 F.2d 496, 503 (5th Cir. 1981) (*en banc*), a hearing is not required unless the petitioner alleges facts that, if proved, would entitle him to a writ of habeas corpus. The core of Birt's complaint is that he was deprived of the counsel of his choice. According to the majority opinion, Reeves appeared on the scene the day before the trial, at which time he met with Birt and his appointed counsel, Collins. There is evidence that Reeves discussed the possibility of a continuance, but the idea was abandoned after Collins advised of the futility of this strategy. At the same conference, Birt insisted that the trial proceed as scheduled so that he could confront one of his co-conspirators who was to testify for the state. It was then agreed by Birt, Reeves and Collins to proceed with the trial with Reeves assisting Collins in Birt's defense. No motion for continuance was made nor was any complaint made to the trial court that Birt or his attorneys were unprepared to go forward with the case. This finding of the state habeas court and the district court is amply supported by the record and is not clearly erroneous.[5] In my view, Birt did not prove his claim although the legal resources for that purpose were available to him at the state habeas level. Therefore, a new hearing on this issue is not necessary.[6]

§ 2254(d) or *Townsend,* none would have warranted a new evidentiary hearing in this situation. For example, this circuit recently held that when a hearing request is premised on § 2254(d)(3) (also the fifth factor listed in *Townsend,* 372 U.S. at 313, 83 S.Ct. at 757, 9 L.Ed.2d at 786), *i.e.* "that the material facts were not adequately developed at the State court hearing", a petitioner must prove two elements: (1) that a material or crucial fact was not adequately developed at the state court hearing, and (2) that failure to develop that material fact "was not attributable to petitioner's inexcusable neglect or deliberate bypass." *Thomas v. Zant,* 697 F.2d 977, 986 (11th Cir.1983). Birt's failure to obtain Reeves's testimony by deposition or sworn affidavit—when the desirability of such evidence was foreseeable and the means of procuring it were readily available—would constitute such inexcusable neglect as to preclude Birt from obtaining a new hearing based on the insufficient development of material facts, § 2254(d)(3).

I also disagree with the majority's conclusion that Birt's trial counsel was ineffective and that a hearing is necessary to determine whether Birt suffered actual prejudice because of these alleged shortcomings. Collins's handling of the case was branded ineffective solely because he did not challenge the composition of the traverse jury list. After a review of the trial record and Collins's testimony at the state habeas corpus hearing, I agree with the district court that Collins's decision was a "reasoned choice" that "can best be characterized as a matter of trial strategy." *Birt v. Montgomery,* 531 F.Supp. 815, 819 (S.D.Ga.1982). Collins weighed several factors, including his discussions with the jury commissioners and citizens of the county, his knowledge that the jury list had recently been revised, his monitoring of jury selection in another trial in the same county, and Birt's express insistence that they proceed immediately to trial without challenging the composition of the jury. As part of his strategy, Collins filed a motion for change of venue, but withdrew it after he was satisfied that a fair jury could be selected in Jefferson County. The majority now concludes that Collins made a mistake by not challenging the jury list. However, as this court has repeatedly held, a defendant is not entitled to perfect, error-free counsel, *Mylar v. Alabama,* 671 F.2d 1299, 1300 (11th Cir.), *petition for cert. filed,* 51 U.S.L.W. 3026 (U.S. Aug. 2, 1982) (No. 81–2240), nor should the representation be judged ineffective based on hindsight. *Young v. Zant,* 677 F.2d 792, 798 (11th Cir.1982). An attorney who makes strategy choices based on reasonable assumptions has rendered effective assistance. *Washington v. Strickland,* 693 F.2d 1243, 1256 (5th Cir. Unit B 1982) (*en banc*), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). Many times it is not clear whether a particular line of defense resulted from the attorney's

conscious choices or from his neglect of various alternatives. Courts, however, generally presume that counsel's actions are based on competent, tactical decisions. *Id.* at 1257.

The district court's determination that Collins's choice was a reasonable and strategic one is a finding of fact, binding unless— as the majority has held—it is clearly erroneous. *Id.* at 1256 n. 23; 1257 n. 24; *see also, Pullman-Standard v. Swint,* 456 U.S. 273, 287–290, 102 S.Ct. 1781, 1789–91, 72 L.Ed.2d 66, 79–81 (1982). The basis for the majority's finding of ineffective assistance is that Collins's decision not to challenge the traverse jury was grounded on inadequate knowledge. Although Collins believed that the impaneled jury would be "fair", he was unaware that the revised jury selection list did not reflect a statistical cross section of the community. *See* note 12, *infra.* and accompanying text. Considering Collins's actions in context, I cannot say that his decision constitutionally infected his representation.[7]

The majority acknowledges that its threshold finding of ineffective assistance of counsel does not warrant the grant of habeas corpus relief. Birt must prove that the purported ineffective assistance created not only "a *possibility* of prejudice, but that [it] worked to his *actual* and substantial disadvantage, infecting his whole trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816, 832 (1982) (emphasis in original), *quoted in Washington v. Strickland,* 693 F.2d at 1258. Even though Birt has not met his initial burden of producing evidence of prejudice, the majority would remand for a hearing on the issue. I firmly believe that such a hearing would be a waste of judicial resources. This court should not require a hearing for consideration of "speculative and inconcrete claims."

---

**7.** In similar cases, counsel's assumptions and choices have been found reasonable. *See, e.g., Washington v. Watkins,* 655 F.2d 1346, 1364 & n. 36 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982) (attorney reasonably chose not to challenge racial composition of grand jury pool after observing tac-

tics of other lawyers in comparable cases); *Gustave v. United States,* 627 F.2d 901, 906 (9th Cir.1980) (failure to inquire into racial bias during voir dire excused because attorney made strategic choice regarding proper allocation of time).

*Baldwin v. Blackburn,* 653 F.2d 942, 947 (5th Cir. Unit A 1981); *United States v. Gray,* 565 F.2d 881, 887 (5th Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978). Birt has not offered any documentation that the racial and sexual composition of the jury resulted in actual prejudice to him. The jury consisted of three white males, five white females, three black males and one black female, 531 F.Supp. at 819 n. 3, which—although not statistically perfect—is certainly a reasonably balanced representation of Jefferson County citizens. In an effort to show that this jury rendered his entire trial fundamentally unfair, the only evidence offered by Birt was the testimony of a sociologist who had performed studies in Lowndes, Coffee, and Ware counties in Georgia. The research did not involve Jefferson County, the locale of Birt's trial. The sociologist suggested that blacks and females may be more hesitant than white males to return a guilty verdict. Thus, Birt, a white male, appears to argue that the presence of three white males on the jury may have resulted in a prosecution-prone panel. I fail to see how one sociologist's hypothesis about the inclination of jurors in different counties could possibly be probative of any issue concerning Birt's Jefferson County trial jury. Birt simply failed to meet his evidentiary burden with respect to actual prejudice.

Moreover, "even if the defense suffered actual and substantial disadvantage, the state may show in the context of *all* the evidence that it remains certain beyond a reasonable doubt that the outcome of the proceedings would not have been altered ..." *Washington,* 693 F.2d at 1262. In a case such as this one, "constitutional deprivation of the assistance of counsel is not shown until prejudice also is shown," *id.* at 1264 n. 33, and these facts plainly do not reveal any actual harm. Without rehashing the gruesome and overwhelming evidence of Birt's guilt, I would conclude that even if error resulted from Collins's failure to challenge the traverse jury list, it was harmless beyond a reasonable doubt. *See generally, Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967).

Accordingly, I concur in the district court's denial of an evidentiary hearing and would affirm its judgment denying the writ of habeas corpus.

### Opinion on Rehearing

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.*

BY THE COURT:

A majority of the judges in active service, on the court's own motion, having determined to have this case reheard en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc on briefs *without* oral argument on a date hereafter to be fixed. The clerk will specify a briefing schedule for the filing of en banc briefs.