**Billy Sunday BIRT, Petitioner-Appellant,**

v.

**Charles N. MONTGOMERY, Warden, Georgia State Prison, Respondent-Appellee.**

**No. 82–8156.**

United States Court of Appeals, Eleventh Circuit.

Feb. 13, 1984.

Rehearing and Rehearing En Banc Denied March 19, 1984.

John C. Boger, New York City, and Eric G. Kocher, Atlanta, Ga., for petitioner-appellant.

Charles E. Brown, Mary Beth Westmoreland, Asst. Attys. Gen., Atlanta, Ga., for respondent-appellee.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.*

R. LANIER ANDERSON, Circuit Judge:

Billy Sunday Birt appeals the denial of his federal habeas corpus petition. That petition raised several constitutional challenges to Birt's state court conviction. The district court denied Birt's claims without conducting an evidentiary hearing. We affirm.

## I. FACTS

In January of 1975, a Jefferson County, Georgia, grand jury returned an indictment charging Birt and three others with two counts of murder, two counts of armed robbery, and one count of burglary. All of the charges related to the 1973 deaths of Reid and Lois Fleming.[1] Some time thereafter, the court appointed Mr. O.L. Collins as counsel for Birt. In March or April of 1975, Collins contacted Birt in Illinois, where Birt was being held on an unrelated federal conviction. At this time, Birt was made aware of the Jefferson County indictment and the court's appointment of Mr. Collins to represent him.

Federal officials brought Birt to Georgia in early June 1975. On June 7, Birt was arraigned. During the arraignment, Birt objected to court-appointed counsel and was given the opportunity to arrange for alternative representation. Pending the appearance of retained counsel, the court maintained Mr. Collins as counsel. At trial, Birt was represented jointly by Mr. Collins and retained counsel, Mr. Reeves.

Birt's trial began on June 23, 1975. Prior to trial, Collins had filed a motion for change of venue. After jury selection, Collins withdrew the motion and stated on the record that the defense was satisfied with the jury selected. The trial went forward under a heavy veil of security, caused by a concern that there would be an escape attempt and by threats of harm to Birt, his co-defendants, and the witnesses who were to testify at the trial. Six days later the jury found Birt guilty of all charges and recommended the death sentence. The trial court imposed two death sentences for the two murders, concurrent life sentences for the two armed robbery counts, and twenty years imprisonment on the burglary count. The Georgia Supreme Court affirmed both the sentences and convictions on direct appeal. *Birt v. State,* 236 Ga. 815, 225 S.E.2d 248, *cert. denied,* 429 U.S. 1029, 97 S.Ct. 654, 50 L.Ed.2d 632 (1976).

Birt challenged his convictions and sentences on numerous grounds in a 1978 state habeas corpus petition. After conducting an evidentiary hearing on Birt's claims, the habeas court determined that the trial court had erred in its jury instructions at the sentencing phase of the trial.[2] That court vacated Birt's death sentences and dismissed the remainder of Birt's claims. The Georgia Supreme Court upheld the habeas

---

* Senior Circuit Judge Elbert P. Tuttle elected to participate in this decision pursuant to 28 U.S.C. 46(c).

1. The facts of the case are set forth more fully in *Birt v. State,* 236 Ga. 815, 225 S.E.2d 248, *cert. denied,* 429 U.S. 1029, 97 S.Ct. 654, 50 L.Ed.2d 632 (1976).

2. Specifically, the state habeas court found that the trial court instructions had failed to explain to the jury that it need not recommend the

court's decision.[3] *Birt v. Hopper,* 245 Ga. 221, 265 S.E.2d 276, *cert. denied,* 449 U.S. 855, 101 S.Ct. 150, 66 L.Ed.2d 68 (1980).

Birt next brought his claims to the District Court for the Southern District of Georgia in a petition for writ of habeas corpus under 28 U.S.C. § 2254. That court, after finding that the state habeas court had afforded Birt a full and fair hearing on all factual disputes, evaluated Birt's legal arguments without conducting an evidentiary hearing and dismissed his petition. *Birt v. Montgomery,* 531 F.Supp. 815 (S.D. Ga.1982). A panel of this court heard Birt's appeal and issued an opinion remanding to the district court for fact findings. *Birt v. Montgomery,* 709 F.2d 690 (11th Cir.1983). We vacated that panel opinion and heard this appeal en banc.

## II. ISSUES ON APPEAL

On this appeal, Birt contends (1) that the state trial court denied him his constitutional right to counsel of his choice; (2) that the state habeas court's fact finding procedures were not adequate to allow him a full and fair hearing on the denial of counsel issue; (3) that he was denied effective assistance of counsel because his court-appointed attorney failed to investigate the demographic statistics necessary to mounting a challenge to the Jefferson County jury rolls; (4) that those jury rolls underrepresented

blacks and women and Birt was thereby denied his right to a jury comprised of a representative cross section of the community; and (5) that the security measures at Birt's trial created an impression of guilt and deprived Birt of an impartial jury in violation of the Sixth and Fourteenth Amendments.

The counsel of choice issue and the evidentiary hearing issue are closely related and we turn first to a joint discussion of those two issues, followed by a joint consideration of the effective assistance of counsel issue and the jury issue, which are also related. With respect to the security measures at trial, we reinstate Part III.D. "Security Measures at the Trial" of the panel opinion, 709 F.2d at 702, affirming the district court on that issue.

## III. DENIAL OF RIGHT TO COUNSEL OF CHOICE AND THE NEED FOR AN EVIDENTIARY HEARING

Birt alleges that the actions of the trial court violated his right to counsel of choice. Noting that the state habeas court found that Birt had waived any right to counsel of choice,[4] and contending that Reeves' testimony would be material to the waiver issue and was not developed at the state hearing,[5] Birt urges that this court should re-

---

death sentence even if it found aggravating circumstances beyond a reasonable doubt.

**3.** At the time of this appeal, the State of Georgia had not yet scheduled a resentencing hearing.

**4.** See *Birt v. Hopper,* 245 Ga.App. at 225, 265 S.E.2d at 278 ("[t]he conclusion of the habeas court that Birt voluntarily accepted the assistance of both attorneys is supported by the record"). The district court also may have determined that Birt waived his choice of counsel claim. *Birt v. Montgomery,* 531 F.Supp. at 817, n. 1 ("[o]nce petitioner retained Mr. Reeves, the Court finds that petitioner voluntarily chose to proceed immediately to trial with the assistance of both [counsel]"). We need not decide whether Birt voluntarily abandoned this claim because we hold that even if he did not, he nevertheless has not stated an adequate claim that he was deprived of right to counsel of his own choice.

**5.** According to Birt, Reeves' testimony would support Birt's contentions that his decision to proceed to trial with both attorneys was not a voluntary waiver of his constitutional right to counsel of choice. See *supra* note 4. Birt did subpoena Reeves to appear at the state habeas proceeding, but that subpoena could not compel Reeves' attendance because Reeves lived more than 150 miles from the state habeas courthouse. To the panel that first heard this appeal, Birt argued that the 150 mile limitation on the subpoena range of the state habeas court under Ga.Code Ann. § 38–801(e) (revised and recodified at § 24–10–21 (1982)), made it impossible for Birt to obtain the testimony of this key witness and therefore the state proceeding was fundamentally inadequate. *See* 28 U.S.C. § 2254(d)(2) (a federal habeas court shall accept the factfinding of a state tribunal unless "the factfinding procedure employed by the state court was not adequate to afford full and fair hearing"). Perhaps in response to the force of the State's argument that the 150 mile

mand to the district court for an evidentiary hearing. Because we conclude that Birt has not satisfied the threshold prerequisite for obtaining an evidentiary hearing, *i.e.,* he has failed to allege facts that if proved would establish habeas relief, we decline to order an evidentiary hearing and we deny his right to counsel of choice claim.

The burden is on the petitioner in a habeas corpus proceeding to establish the need for an evidentiary hearing. *Douglas v. Wainwright,* 714 F.2d 1532 at 1543 n. 10 (11th Cir.1983); *Dickson v. Wainwright,* 683 F.2d 348, 351 (11th Cir.1982). In *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Supreme Court set forth a threshold inquiry for a court evaluating whether the petition has met that burden: "We first must determine whether the petitioner's allegations, if proved, would establish the right to habeas relief." *Id.* at 307, 83 S.Ct. at 754. *See also Ross v. Hopper,* 716 F.2d 1528, 1534 (11th Cir.1983); *Guice v. Fortenberry,* 661 F.2d 496, 503 (5th Cir. 1981) (en banc);[6] *Cronnon v. Alabama,* 587 F.2d 246 (5th Cir.), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1978). In deciding the sufficiency of a request for a hearing, we consider the allegations of the defendant's habeas petition and supplement the petition with those facts undisputed on the record below. *See, e.g., Cronnon v. Alabama,* 587 F.2d at 249.[7]

We therefore must examine the allegations in Birt's habeas petition and the undisputed facts in the record before us to determine whether his claim of denial of right to counsel of choice contains merit. If Birt has failed to state a claim under this inquiry, then his request for an evidentiary hearing also must be denied. Birt's claim is as follows.[8]

In January of 1975, Birt was indicted by the Jefferson County Grand Jury. The court appointed O.L. Collins as counsel. Collins informed Birt of the indictment and court appointment in March or April of

---

limit provides no obstacle to the taking of oral depositions, *cf. Coleman v. Zant,* 708 F.2d 541, 548 (11th Cir.1983) (evidentiary hearing ordered where petitioner could not bring live witnesses to state hearing because of the 150 mile rule and where oral depositions were effectively precluded because petitioner was indigent and state habeas court declined to provide funds therefor), Birt couches his argument in somewhat different terms in his appeal brief to the en banc court. His primary contention now is that the absence of Reeves' testimony in the state habeas proceeding prevented the state court from adequately developing a "material" fact that pertained to Birt's counsel of choice claim, and the failure to develop that material fact was not attributable to Birt's inexcusable neglect or deliberate bypass. See *Thomas v. Zant,* 697 F.2d 977, 986 (11th Cir.1983), in which the court held that a habeas petitioner seeking an evidentiary hearing must show "that a fact pertaining to his federal constitutional claim was not adequately developed and that the fact was 'material' ... or 'crucial' to a fair, well rounded development of the material facts, [and] that failure to develop that material fact was not attributable to petitioner's inexcusable neglect or deliberate bypass." Because we hold that Birt has failed to surmount the threshold hurdle of stating a valid constitutional claim, we need not address the foregoing arguments urged by Birt to obtain an evidentiary hearing.

6. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

7. The petitioner in *Cronnon* claimed that the state trial court had improperly admitted an in-court identification procedure. The federal district court had dismissed the claim on the issue without an evidentiary hearing. The appellate court examined the petitioner's allegations, assumed each allegation would be decided in the petitioner's favor, but nevertheless held that from undisputed facts in the record the petitioner had not stated an adequate legal claim on the identification issue.

Our inquiry under this threshold test of the *Townsend* opinion thus is somewhat similar in scope and purpose to a Fed.R.Civ.P. 12(b)(6) motion or a Rule 56 motion for summary judgment. Courts use both provisions to save the time and resources that would be wasted hearing evidence on claims that are legally insufficient.

8. Most of the facts are taken directly from Birt's habeas corpus petition to the district court. Where Birt's allegations differ from the facts as found by the state habeas corpus court, or those asserted by the State on this appeal, we adopt fully the allegations in Birt's complaint for purposes of analyzing the sufficiency of his choice of counsel claim.

1975, at which time Birt told Collins that he did not want Collins to represent him.[9] Nevertheless, Collins continued to investigate the case and interview government witnesses. Shortly before his arraignment, Birt was transferred to Georgia from the federal penitentiary in Illinois, where he was being held on unrelated federal charges. At the arraignment on June 7, 1975, Birt told the court that he was unhappy with appointed counsel and that he wished to retain counsel. The court did not discharge Collins as counsel at this time, but did allow Birt access to a telephone so that he could seek retained counsel.[10] The dialogue that took place between Birt and the court during the arraignment is the last time Birt mentioned to the court his dissatisfaction with the arrangements that had been made for his representation at trial. After his arraignment, and some seven to ten days before trial, Birt's family was able to interest Mr. Reeves in representing Birt. On Sunday night, June 22, the day before trial was to begin, Reeves, Collins and Birt finally met. Reeves had done very little preparation because of limited time and resources. Collins, when questioned by Reeves on the likelihood of the trial judge granting a continuance, expressed his opinion that the judge would not grant Reeves additional time to prepare because Birt had delayed so long in obtaining counsel and because Collins had ample time to prepare and was in fact prepared. Birt went to trial with both ·Collins and Reeves representing him.[11]

In previous cases, we have recognized four distinct aspects to a criminal defendant's right to counsel. In *Gandy v. Alabama*, 569 F.2d 1318, 1323 (5th Cir.1978), the Former Fifth Circuit stated that criminal defendants have the

> right to have counsel, the right to a minimum quality of counsel, the right to a reasonable opportunity to select and be represented by chosen counsel, and the right to a preparation period sufficient to assure at least a minimal quality of counsel.

*Id.* at 1323. Birt's claim focuses on the latter two elements, denial of counsel of choice and denial of preparation time. When a court unreasonably denies defendant counsel of choice, the denial can rise to the level of a constitutional violation. *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). As a necessary corollary to the right to counsel of choice, the court further must give the defendant a "reasonable opportunity to employ and consult with counsel; otherwise the right to be heard by counsel would be of little worth." *Chandler v. Fretag,* 348 U.S. 3, 9–10, 75 S.Ct. 1, 4–5, 99 L.Ed. 4 (1954).

9. Testifying at the state habeas proceeding, Collins refuted this assertion and claimed that Birt did not mention any dissatisfaction with Collins' appointment until the June 7 arraignment. As noted above, we assume Birt's version for the present purposes.

10. The federal petition for habeas corpus quotes Birt's testimony at the state habeas proceeding as follows:

> Q: Do you recall how long you spoke with Mr. Collins at the time of the arraignment?
> A: I didn't talk to him none. Judge, went before for the arraignment, Judge told me I appointed this man for attorney and I told the Judge I didn't want him, I said I don't want this man for no attorney. I even talked to him on the phone. I told the Judge I didn't want him. All I wanted to do was make a phone call to my wife and I would hire me an attorney.
> Q: What did the Judge say in response, do you recall?

> A: Judge told me, well he, I appointed this man for your attorney. He is going to be your attorney.

Collins testified, and Birt does not dispute that the state trial court then cooperated in Birt's efforts to seek retained counsel. That Birt was in fact able to retain Reeves further undermines any inference that the trial court impeded his efforts to retain counsel.

11. The conversation that took place the night before Birt's trial was the source of conflicting testimony at the state habeas corpus proceeding. For purposes of determining whether Birt's petition states a denial of counsel claim, we have rejected Collins' testimony and accepted Birt's version of the conversation. We therefore disregard the fact that every court considering this issue has found Collins' testimony—that Birt freely accepted representation by both counsel because he wanted the trial to go forward—more credible than Birt's contrary assertions. *See supra,* note 4.

The defendants in *Powell v. Alabama* were two black youths accused of participating in the rape of a white girl. Both youths were arrested and arraigned in Alabama where they had no family · or friends. Six days after arraignment, their trial took place in an atmosphere of public hostility, at which time the court appointed all the members of the local bar to represent the defendants because no other qualified counsel had stepped forward. In reversing the defendant's convictions on due process grounds, the Supreme Court stated that "a defendant should be afforded a fair opportunity to secure counsel of his choice. Not only was that not done here, but such designation as was attempted was either so indefinite or so close upon trial as to amount to a denial of effective and substantial aid in that regard." 287 U.S. at 53, 53 S.Ct. at 58.[12]

The right to counsel of choice, however, unlike the right to counsel in general, is not absolute. *Gandy v. Alabama,* 569 F.2d at 1323; *United States v. Gray,* 565 F.2d 881, 887 (5th Cir.), *cert. denied,* 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978). At some point, that right must bend before countervailing interests involving effective administration of the courts. *Gandy v. Alabama,* 569 F.2d at 1323, n. 9 ("desirable as it is that a defendant obtain private counsel of his own choice, that goal must be weighed and balanced against an equally desirable public need for the efficient and effective administration of criminal justice").[13] Thus, when a defendant asks for a continuance on the eve of his trial in order to allow time for recently retained counsel to prepare, the court must balance that request against many other factors. *See e.g., Ungar v. Sarafite,* 376 U.S. 575, 589–91, 84 S.Ct. 841, 849–50, 11 L.Ed.2d 921 (1964); *Gandy v. Alabama,* 569 F.2d at 1324–25 (listing six factors of relevant consideration when denial of continuance is challenged on choice of counsel grounds); *United States v. Uptain,* 531 F.2d 1281, 1291 (5th Cir.1976) (listing as many as 13 relevant factors when denial of preparation time is alleged). In *Gandy v. Alabama,* the Former Fifth Circuit stated:

> Viewing all the circumstances surrounding the trial court's decision, in the unusual case the denial of a continuance may be so arbitrary and so fundamentally unfair as to do violence to the Constitutional principle of due process.
>
> Due process demands that the defendant be afforded a fair opportunity to obtain the assistance of counsel of his choice to prepare and conduct his defense. The constitutional mandate is satisfied so long as the accused is afforded a fair or reasonable opportunity to obtain particular counsel, and so long as there is no arbitrary action prohibiting the effective use of such counsel.

569 F.2d at 1323 (quoting *United States ex rel Carey v. Rundle,* 409 F.2d 1210, 1215 (3d Cir.1969), *cert. denied,* 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970)) (footnotes omitted).[14]

---

**12.** *See also, Reickauer v. Cunningham,* 299 F.2d 170 (4th Cir.), *cert. denied,* 371 U.S. 866, 83 S.Ct. 127, 9 L.Ed.2d 103 (1962) (holding that district court should hold evidentiary hearing on habeas petitioner's right to counsel of choice claim, where the petitioner was subjected to 46 days custodial interrogation and never given access to a telephone to call his lawyer, and it further was clear from record that counsel appointed shortly before trial was largely disinterested and highly ineffective).

**13.** For example, the right to counsel of choice comes into conflict with the court's administrative duties when it appears that the defendant's chosen counsel should be disqualified from appearing in a case. *See United States v. Hobson,* 672 F.2d 825, 827 (11th Cir.), *cert. denied,*

459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982) (trial court disqualification of the defendant's counsel of choice because counsel had prior knowledge of crime held not to violate defendant's right to counsel of choice); *United States v. Kitchin,* 592 F.2d 900, 903 (5th Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979) (upholding dismissal of defendant's counsel for conflict of interest and stating that "a defendant's right to counsel of choice is not absolute and must yield to the higher interest of the effective administration of the court.").

**14.** The petitioner in *Ungar v. Sarafite, supra,* claimed that the trial court in his contempt hearing had denied him assistance of counsel

■ It is proper, then, that we look to the circumstances before us and determine whether the state trial court unfairly denied Birt his right to counsel of choice and thereby deprived him of due process. We conclude that the instant case does not even present a close question. After comparing the circumstances Birt has alleged with the facts of other counsel of choice cases, we are convinced that Birt should not prevail on his denial of choice of counsel claim. If, in fact situations similar to the present case, we have upheld a trial court's denial of a continuance, *a fortiori* we must hold that Birt, who did not even request a continuance, was not denied due process. Many such cases have so held, and we find that they control the outcome of Birt's claim.

In *United States v. Sexton*, 473 F.2d 512 (5th Cir.1973), the defendant was convicted in 1971 of tax violations relating to the possession of non-tax-paid distilled spirits. On April 13, 1972, the appellate court reversed this conviction and remanded for a new trial. The new trial was set for the week of June 19, 1972. Four days before the new trial was to begin, Sexton's court-appointed attorney petitioned the court asking to be discharged on grounds that Sexton had retained alternative counsel. On the same day, Sexton petitioned the court for a continuance because his retained counsel had a busy schedule and would be unable to prepare Sexton's defense. The district court denied the motion for discharge and the request for a continuance, citing *Bowman v. United States*, 409 F.2d 225, 226 (5th Cir.), *cert. denied*, 398 U.S. 967, 90 S.Ct. 2183, 26 L.Ed.2d 552 (1969) ("judges must be vigilant that requests for appointment of a new attorney on the eve of trial should not become a vehicle for achieving delay"). The court of appeals affirmed the district court's finding that Sexton had unreasonably delayed in his efforts to seek alternative counsel.

■ The facts alleged in Birt's petition for a habeas corpus reveal a far weaker case than the claims found to be inadequate in *Sexton*. As in *Sexton*, much time elapsed between Birt's learning of the indictment and his efforts to retain counsel. Furthermore, in *Sexton*, appointed counsel had asked to be discharged, and alternative counsel was available and waiting in the wings. Conversely, when Birt expressed dissatisfaction with appointed counsel at his arraignment,[15] he offered no alternative

---

when it denied his motion for a continuance. The Supreme Court described the petitioner's right to a continuance as follows:

> The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time to file that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrarywise, myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

376 U.S. at 589, 84 S.Ct. at 849 (citations omitted).

**15.** Birt did not raise any specific complaints about his appointed counsel at the arraignment and the trial court had no duty to inquire into Birt's objection to Collins. In some instances, the trial court may be put on notice that the defendant has a specific objection to his appointed counsel, such that appointed counsel might not be capable of rendering effective assistance. For example, in *Brown v. Craven*, 424 F.2d 1166 (9th Cir.1970), the defendant was charged with murder. The court appointed a public defender to represent him. Defendant and his appointed counsel soon developed some disagreement that eventually led to an absence of communication. The defendant made four motions for change of counsel and the public defender indicated before trial that he was not really prepared to defend because he was unable to get substantial information from his client. On appeal, the court held that the trial court's failure to make further inquiry into the problems between defendant and appointed counsel had violated defendant's constitutional rights to effective counsel. *See also Lee v. United States*, 235 F.2d 219 (D.C.Cir. 1956) (trial court appointment of counsel to whom defendant had stated objections and had threatened with ethical prosecution was found to violate defendant's right to counsel of choice).

In the present case, Birt's statement at his arraignment that he did not want Collins for his attorney did not require the court to inquire

counsel to replace Collins. Most importantly, unlike Sexton, Birt never filed a motion for continuance on grounds that his retained counsel had an inadequate opportunity to prepare.

In *United States v. Uptain*, 531 F.2d 1281 (5th Cir.1976), the defendant was arraigned on bank robbery and conspiracy charges on May 2, 1975. He had been in custody since April 28th of that year. The court set a trial date of May 12, ten days from the arraignment, and permitted defendant's attorney only five days to file pretrial motions. On May 8, four days before the trial was to begin, defendant's attorney made a motion for continuance or, in the alternative, a motion to withdraw as counsel. The district court denied the motions on grounds that counsel had adequate time to prepare; although the attorney had appeared with Uptain only ten days before trial, he had significant previous experience with the case because he had been representing Uptain's co-defendants for several months. The court of appeals upheld the district court's decision stating it was "unable to see how more preparation would have significantly changed the course of the trial." 531 F.2d at 1289.

Similarly, in *Ungar v. Sarafite*, the Supreme Court held that the five days between petitioner's notice of the claims against him, and the contempt trial "was not constitutionally inadequate time to hire counsel and prepare a defense to a case in which the evidence was fresh. The witnesses . . . [were] readily available." 376 U.S. at 590, 84 S.Ct. at 850. *See also United States v. Long*, 419 F.2d 91 (5th Cir.1969) (holding that defendant's rights to choose counsel and adequately prepare were not violated when accused, who had known of the upcoming trial for five months, retained new counsel two days before trial and the court refused continuance); *Juarez-Flores v. United States*, 394 F.2d 161 (5th Cir.1968) (no violation when attorney appointed 11 days before trial). *But see United States v. Millican*, 414 F.2d 811 (5th Cir.1969) (right to counsel violated when attorney appointed two days before trial was unable to interview promising witnesses).

It is clear that a short period of time (two plus weeks in Birt's case) between arraignment and the beginning of trial does not in itself constitute denial of counsel in violation of the defendant's constitutional rights. In addition, Collins had many months to prepare Birt's defense, and Reeves had seven to ten days to prepare. Furthermore, in *Uptain*, the court held that the adequacy of the defense at trial was one of the factors relevant to considering a denial of right to counsel of choice. 531 F.2d at 1290. We have examined the record in the present case and find that both attorneys participated significantly and effectively at trial.[16] Finally, and most significantly, we must emphasize again that, unlike the defendants in all the cases cited, Birt never even requested a continuance.

If, following the hiring of Reeves, Birt had moved for disqualification of Collins, substitution of Reeves, and a continuance to allow Reeves time to prepare, our prior cases establish that a trial court's denial of the motions probably would not have violated Birt's right to counsel of choice. The Supreme Court has said: "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar v. Sarafite*, 376 U.S. at 589,

into Birt's reasons for wanting counsel other than Collins. Indeed, Birt never asked the judge to dismiss Collins from the case, but rather he claims he told the judge: "All I wanted to do was to make a phone call to my wife and I would hire me an attorney." It is undisputed on this record that Birt was given the opportunity he sought.

16. Collins handled the motions, objections, and cross-examination during the State's presentation of most of its case. Reeves, however, cross-examined the State's prime witness, and he also conducted direct examination of Birt and the five alibi witnesses called in defending the case. Both Collins and Reeves presented effective closing arguments and arguments to the jury at the sentencing phase of the trial.

84 S.Ct. at 850. In this case, not only did Birt fail to present any reasons at all to justify a continuance, he failed to even make a motion for continuance; thus the trial court was not even implicated in the final decision that formed the structure of Birt's representation at trial. Under these circumstances it is apparent that the court did not commit an error, and certainly not an error that denied Birt his constitutional right to counsel of choice. The trial court acted appropriately when Birt stated at his arraignment that he was dissatisfied with the court's appointment of Collins. It assured Birt his right to seek alternative counsel, yet protected Birt's ultimate interest in competent representation by maintaining Collins' appointment until retained counsel was available. *See e.g., United States v. Jones,* 369 F.2d 217 (7th Cir. 1966).[17]

▮ We have assumed the truth of each and every allegation that Birt raises in his petition for writ of habeas corpus, and we have supplemented his assertions only with undisputed facts from the record. Viewed in this light, Birt nevertheless has failed to

allege facts sufficient to entitle him to the writ he seeks on the basis of denial of counsel of choice. Because his petition does not state an adequate claim for relief, Birt also has failed to meet his threshold burden under *Townsend v. Sain* of establishing the need for an evidentiary hearing.[18] We conclude that the district court properly denied Birt's request for an evidentiary hearing on the counsel of choice issue, and correctly determined that Birt was not entitled to relief on this claim.

## IV. JURY CHALLENGE AND INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Birt's habeas petition next raises two separate but inextricably related claims: he claims that he received ineffective assistance of counsel because his attorney failed to investigate traverse jury discrimination in Jefferson County adequately; he also claims that there was substantial underrepresentation of blacks and women on the jury list from which his trial jury was selected, and that this deficiency in the jury pool deprived him of a jury comprised of a

---

17. As in the present case, the defendant in *Jones* informed the trial court at his arraignment that he wished to retain his own counsel. Nevertheless, the trial court appointed counsel to represent the defendant until such time as he was able to obtain an attorney of his choice. Shortly after counsel was appointed, defendant moved to vacate the court's appointment. The trial court granted the motion; however, it also entered a contingent order that should defendant appear without qualified counsel at trial, appointed counsel would have the responsibility to defend. On appeal, the defendant challenged these actions by the trial court alleging that they deprived him of right to counsel of choice. The appellate court held "[t]here was no deprivation of [defendant's] constitutional rights in the appointment of [counsel]. Assuming [counsel] was for some reason personally unsatisfactory to [defendant], [defendant nevertheless] did not request appointment of other counsel." 369 F.2d at 220. The court further concluded that the record established that the defendant had been well represented by appointed counsel.

Similarly, we conclude that the state court acted wisely in refusing to dismiss Collins from the case on the slender basis of the statement made by Birt at his arraignment. *See supra* note 10.

18. We respectfully believe that the dissent has misunderstood our holding. We do not "affirm" the finding of the state court or the district court with respect to whether or not Birt waived his right to counsel of choice. We have assumed arguendo that Reeves' testimony would support Birt's contention that Birt's desire was to go forward only with Reeves as his counsel rather than with both Reeves and Collins. *See, supra,* notes 4, 5, and 11.

After making that assumption favorable to Birt, our holding is that Birt has still failed to state a claim which would establish the right to habeas relief. On the undisputed facts of this case—including the facts relating to Collins' preparedness, the timing of Birt's hiring of retained counsel, the appropriate assistance afforded to Birt by the judge at the arraignment immediately upon Birt's expression of a desire to retain counsel, and in particular the fact that no one asked the trial judge for a continuance to enable Reeves to handle the case alone—the controlling case law indicates that Birt has failed to state a meritorious claim of right to counsel of choice. Under these circumstances, Reeves' proposed testimony is not "material." *Thomas v. Zant,* 697 F.2d 977 (11th Cir.1983).

representative cross-section of the community. We turn briefly to the latter claim.

Birt never challenged the traverse jury pool before or during his trial. Under Georgia law, his failure to challenge at this time constituted a waiver of his right to challenge the jury pool subsequently.[19] Before we can hear the merits of his jury composition challenge on collateral attack, Birt must show cause for his failure to raise the challenge before the trial court and actual prejudice from that failure. *Francis v. Henderson,* 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976). *See also Engel v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Huffman v. Wainwright,* 651 F.2d 347 (5th Cir.1981) (applying the holding of *Francis v. Henderson,* which was a grand jury case, to a traverse jury challenge). Birt has presented only one arguably meritorious contention to satisfy the cause element of the *Francis v. Henderson* analysis; that is, that his trial counsel failed to investigate properly and timely challenge the traverse jury composition and therefore rendered ineffective assistance of counsel. When counsel is found to be ineffective, the court will not bind a defendant to a state procedural waiver of possible constitutional defenses, and the cause element of *Francis* is satisfied.[20] *Sincox v. United States,* 571 F.2d 876, 879–80 (5th Cir.1978).

Thus, our determination of both of Birt's claims will hinge on whether Collins rendered ineffective assistance of counsel. We conclude that he did not and we affirm the district court's dismissal of both the ineffective assistance claim and the jury challenge.

The standards for evaluating ineffective assistance of counsel challenges are well developed in this circuit. Criminal defendants have a right under the Sixth Amendment to counsel reasonably likely to render and actually providing reasonably effective assistance. *Adams v. Wainwright,* 709 F.2d 1443 (11th Cir.1983); *Darden v. Wainwright,* 699 F.2d 1031 (11th Cir.1983); *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (Unit B en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983).[21] Birt does not challenge Collins' qualifications; he only challenges counsel's performance prior to and during the trial. In this vein, Birt was not entitled to error free representation, only representation that fell within the range of competence demanded of attorneys in criminal cases and conformed to professional standards of reasonable investigation of the facts and understanding of the law. *Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir.1983); *Washington v. Strickland,* 693 F.2d at 1251; *Goodwin v. Balkcom,* 684 F.2d 794, 804 (11th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1982).

Our evaluation of Birt's claim must focus on the "totality of the circumstances" surrounding his representation. *Washington v. Strickland,* 693 F.2d at 1250; *Goodwin v. Balkcom,* 684 F.2d at 804. Birt challenges only a single aspect of his counsel's investigation and defense, *i.e.,* the adequacy of Collins' knowledge and decision about the jury pool. When only a single error is alleged, the counsel's failure must be so substantial as to "stamp his overall performance with a mark of ineffective-

---

**19.** "The right to object to the composition of the . . . trial jury will be deemed waived . . . unless the person challenging the sentence shows in the petition and satisfies the court that cause exists for him being allowed to pursue the objection after conviction and sentence has otherwise become final." Ga.Code Ann. § 50–127(1) (recodified at § 9–14–42(b) (1982)).

**20.** Bare claims of ineffective assistance, however, are insufficient to satisfy the cause ele-

ment of *Francis v. Henderson. Sullivan v. Wainwright,* 695 F.2d 1306, 1311 (11th Cir. 1983). *See Engel v. Isaac,* 456 U.S. at 130–35, 102 S.Ct. at 1572–75 (defining "cause" under *Wainwright v. Sykes* restrictively).

**21.** In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34.

**598**

ness." *Stanley v. Zant,* 697 F.2d at 962.[22] *Compare Goodwin v. Balkcom,* 684 F.2d at 803–20 (counsel found ineffective based on a number of "conspicuous" errors).

 Finally, a finding of ineffective assistance does not necessarily mean that the petitioner is entitled to relief on his claim. To prevail, the petitioner must show prejudice, which is defined as an "actual and substantial disadvantage to the course of his defense." *Washington v. Strickland,* 693 F.2d at 1262 (*citing United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982). *See United States v. Costa,* 691 F.2d 1358, 1363 (11th Cir.1982). If a defendant meets that burden, the state is then given an opportunity to rebut the petitioner's claim by showing that, on the facts of the case as a whole, the detriment suffered was harmless beyond a reasonable doubt. *Washington v. Strickland,* 693 F.2d at 1264. Because we hold that counsel's performance in the present case was not ineffective, we need not and do not reach the prejudice prong. Thus, we offer no opinion on the method by which a petitioner could establish prejudice in a case like this in which the actual trial jury reflected a far more representative cross section of the community than did the pool from which that jury was drawn.[23]

 We now turn to the ineffective assistance prong, and examine counsel's conduct in the present case. At the state habeas proceeding, Birt's attorney Collins testified that he was aware that a potential challenge could be mounted against the tra-

verse jury list of Jefferson County. Collins' awareness was based on his knowledge of a successful challenge to the jury pool by a defense counsel two or three months prior to the Birt trial. With a potential challenge in mind, Collins travelled on several occasions to Jefferson County. He examined the traverse jury list, talked with jury commissioners, and had discussions with the county clerk in an effort to gauge the success of the commissioners' efforts to improve representation of blacks and women in the pool.[24] Collins also investigated the methods for selecting jurors and, as much as possible, the character of individual jury members. He described his impression following his investigation by testifying in the state habeas proceeding: "If I myself was going on trial in that county, ... I would [have] be[en] satisfied with that particular jury box." State Habeas Transcript at 314. Collins admitted, however, that he never sought to uncover the exact ratios of blacks or women on the traverse jury list and did not know the exact ratios in the county for purposes of determining the statistical disparity between the two.[25] *Id.* at 329.

If Collins had stopped his efforts at this point, this case might be more difficult for us to decide. He did not. Collins went on to concentrate on other aspects of trial preparation, but reserved his final judgment regarding the jury pool challenge until later, when he could "count noses, ... could see the composition, age wise and color wise and female and male wise, ... having selected the fourteen people." *Id.*

**22.** In *Nero v. Blackburn,* 597 F.2d 991, 994 (5th Cir.1979), the court stated that "[s]ometimes a single error is so substantial that it alone causes the attorney's assistance to fall below the sixth amendment standard." We note, however, that a single error will seldom rise to such serious proportions.

**23.** The dissent's assertion—that the majority declined to find that the prejudice prong was established because the unconstitutional composition of the jury pool was "cured" by the happenstance selection of a fair cross-section on the actual jury—misconstrues our holding. As indicated in the text we expressly decline to express any opinion on that issue.

**24.** As a result of the jury pool challenge prior to Birt's trial, Judge McMillan, the Superior Court Judge of Jefferson County, had ordered the jury commissioners to increase the number of blacks and women on the traverse jury list.

**25.** Had Collins investigated those statistics, he would have found that blacks made up 54.5% of the Jefferson County population and women comprised 52.5%. By comparison, the traverse jury pool from which Birt's actual jury was selected consisted of 21.6% blacks and 34.9% women. Black underrepresentation therefore was 32.9%; women were 17.6% underrepresented.

at 319. To preserve the possibility of future challenges to the jury pool, Collins filed a motion for change of venue the morning of trial. If the jury selected had been unsatisfactory in any fashion, Collins planned to pursue the change of venue motion. The jury ultimately selected consisted of three white men, three black men, five white women, and one black woman.[26] At the close of jury selection, Collins announced in open court, with Birt present:

> Defense counsel now joins in with the court and asks the court for an order overruling that motion [the change of venue motion], if the court sees fit to do it that way. We feel we have got a fair, impartial jury and we don't feel that there's any need for the court to hear any

discussion at all about change of venue but rather than withdraw since it's already made part of the record, we would like the court to just show that the defense counsel is joining in the motion to overrule that change of venue motion.

Trial Transcript at p. 242.[27]

The sole error that Birt charges against Collins is the inadequacy of Collins' investigation into the Jefferson County jury pool statistics, on the theory that Collins' ignorance of the statistics and case law [28] necessary for making a jury challenge left the counselor in no better position than one who had conducted no investigation at all. For purposes of analyzing Birt's claim, we will assume arguendo that Collins' investigation of the potential jury pool challenge was less

---

**26.** Birt is a white male; both victims of the murders were white.

**27.** The record thus shows that Collins' judgment regarding the fairness of the jury pool was an ongoing portion of his trial strategy. He testified that his concern included both the pretrial publicity and the jury composition. He had expressly preserved his change of venue motion until after the actual jury of twelve plus two alternates was selected; his right to directly challenge the composition of the jury array did not expire until the jury was "put upon" him. *Young v. State,* 232 Ga. 285, 206 S.E.2d 439, 442 (1974). For a discussion of when a jury is "put upon" a defendant, *see Spencer v. Zant,* 715 F.2d 1562, 1568–73 (11th Cir.1983), rehearing pending; *Spencer v. Hopper,* 243 Ga. 532, 255 S.E.2d 1, 3–4 (1979); *Walls v. State,* 161 Ga.App. 235, 291 S.E.2d 15, 17–18 (1982) (describing the process of putting the array upon the defendant as the "ancient mode of commanding his attention to the personnel of the panel").

In this case five panels of 12 potential jurors each were called seriatum to the jury box. Each panel in turn was asked certain statutory voir dire questions, and then permitted to resume their seats in the courtroom. After five panels were thus called to the jury box and questioned, the state attorney requested that the entire list of 48 jurors who had been thus qualified be read "[i]n order that we may be absolutely certain as to which jurors are being put upon us." Trial Transcript at p. 54. Thereafter, beginning with the first juror from the first panel, the jurors were called individually, and questioned further on an individual basis. When the questioning of each juror was completed, the court stated that the juror was "on the state." The State then either accepted the

juror or exercised a peremptory challenge to excuse him. If the State accepted the juror, he was similarly put "on the defendant."

In this case, we need not decide the precise point during this process that the jury was "put upon" Birt. In analyzing the ineffective assistance of counsel issue, we need only to determine whether Collins' trial strategy regarding his concern over the fairness of the jury pool was reasonable. Whatever point the Georgia law might fix as the precise moment that the jury was put upon Birt, it is clear that Collins was afforded an opportunity to view the prospective jurors and verify his satisfaction with the composition of the array. Moreover, it is undisputed that Collins had filed a change of venue motion and had agreed with the prosecution to delay consideration of that motion until after striking the jury. At the least, as Collins testified, he could have pressed his arguments in that motion if he had been dissatisfied with the composition of the 12 jurors actually selected, which, although not a substitute for a direct challenge to the composition of the jury, can properly be considered in our determination that Collins' overall strategy was reasonable.

**28.** The method of selecting veniremen, and the actual statistical disparities in the jury pool, *see supra* note 24, may have given Birt grounds to challenge the jury pool. *See e.g., Castaneda v. Partida,* 430 U.S. 482, 497, 97 S.Ct. 1272, 1281, 51 L.Ed.2d 498 (1977) (holding that equal protection claim was available where method of selecting veniremen is subjective and susceptible to potential abuse, and citing a number of cases preceding Birt's trial); *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 532 (1970) (analyzing the statistical disparity necessary to a finding of unconstitutional composition of a jury pool).

than adequate.[29] We therefore will evaluate Collins' performance as if he made the choice to go forward with the trial, but without fully investigating the grounds for a challenge to the jury pool. In the absence of any contrary evidence, we would assume that Collins' choice to go forward was strategic. *See Washington v. Strickland,* 693 F.2d at 1257; *Stanley v. Zant,* 697 F.2d at 970 (presumption of strategic choice based on general presumption of attorney competence). In fact, from Collins' statements about the jury chosen, it is clear that his trial decision was strategically motivated. Our concern, therefore, is whether Collins based that strategy on reasonable assumptions.[30]

In *Washington v. Strickland,* the Former Fifth Circuit stated that:

> [A]n attorney who makes a strategic choice to channel his investigation into fewer than all plausible lines of defense is effective so long as the assumptions upon which he bases his strategy are reasonable and his choices on the basis of those assumptions are reasonable.

693 F.2d at 1256. The court further described three factors that, although not necessary to a finding that counsel made a reasonable strategic choice, assist us in evaluating counsel's performance. All three of these factors support a finding that Birt's counsel based his trial strategy on reasonable assumptions and did not render ineffective assistance.

■ First, the attorney's experience and his general awareness of the line of defense that he rejected without adequate investigation will influence the court's reasonableness determination. *See Kemp v. Leggett,* 635 F.2d 453, 454 (5th Cir.1981) (Unit B) (inexperienced attorney's failure to interview witnesses and his adoption of a defense incompatible with the facts was found to be ineffective). In the present case, Collins had extensive trial experience. Although he did not fully investigate every angle of a potential jury challenge, he was aware that such a challenge was available and conducted a substantial investigation into the jury pool. *Compare Washington v. Watkins,* 655 F.2d 1346 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982) (experienced counsel made no investigation into the jury pool and the court nevertheless held counsel was not ineffective).

■ Second, when the defense tactic the attorney pursued would have been inconsistent with the rejected tactic, on which the attorney conducted inadequate investigation, the decision not to investigate the rejected line is more likely to be found reasonable. *See Jones v. Kemp,* 678 F.2d 929, 931–32 (11th Cir.1982) (counsel's decision not to investigate line of defense that would have contradicted defendant's testimony was not ineffective); *Gray v. Lucas,* 677 F.2d 1086, 1094 (5th Cir.1982). Here, Collins' trial strategy was inconsistent with a jury pool challenge. Collins could not have pursued the jury challenge and at the same time retained the benefit of trial before the jury selected, which he reasonably found to be fair. *Compare Washington v. Watkins,* 655 F.2d at 1368 (counsel found

---

**29.** Both the state habeas court and the district court adopted Collins' testimony that one reason for not challenging the traverse jury pool was Birt's "desire to proceed to trial as rapidly as possible." 531 F.Supp. at 819. If we were to adopt the state court's factfinding on this issue, the pressure Birt placed on Collins not to delay the trial would surely undermine Birt's argument that Collins was ineffective. A jury pool challenge would have resulted in delay and therefore would have worked against Birt's urgings to Collins.

Birt, however, has challenged the adequacy of the state habeas court's finding on this issue, on grounds the Reeves' testimony, which was unavailable at that proceeding, might show

that Birt did not insist that the trial take place immediately. We note that Birt has not offered to produce the substance of Reeves' contemplated testimony on this issue. However, to emphasize that Reeves' testimony would not be material on this issue, we expressly do not rely on this particular state court finding in resolving Birt's ineffective assistance of counsel claim.

**30.** *See Washington v. Strickland,* 693 F.2d at 1255 ("a strategy chosen after full investigation is entitled to almost automatic approval by the courts, a strategy chosen after partial investigation must be scrutinized more closely").

effective even though jury pool challenge he rejected would have in no way contradicted alibi defense presented).

■ Finally, in evaluating the reasonableness of counsel's strategic choice, the foreseeable prejudice that might result from that choice is a relevant factor. *Washington v. Strickland,* 693 F.2d at 1257, n. 23. In this vein, Collins' decision is impossible to fault. His strategic choice gave his white male client a trial jury with an equal balance of men and women.[31] Significantly, Birt's jury had only three white males, the category that Birt has attempted to show is excessively harsh on defendants in capital cases.[32]

After examining these factors, and based on the totality of circumstances in this case, we conclude that Collins made a reasonable strategic choice to go forward with Birt's trial rather than pursuing a traverse jury pool challenge.[33] Birt has not convinced us that the single alleged error stamped Collins' entire trial performance as ineffective.

Because the only seriously asserted ground for satisfying the "cause" prong of *Wainwright v. Sykes* is ineffective assistance of counsel, and in light of our conclusion that Collins was not ineffective, Birt has not established "cause" for us to disregard his state procedural waiver of the right to challenge the traverse jury directly.

Thus we reject both Birt's jury pool challenge and his ineffective assistance of counsel claim.

For the foregoing reasons, the judgment of the district court denying habeas corpus relief is

AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

I dissent from that portion of the majority opinion that holds that the state habeas court fact-finding procedures were adequate to allow Birt a full and fair hearing on the denial of counsel issue.

I concur in that portion of Judge Hatchett's dissent to the effect that the material facts concerning Birt's right to choice of counsel were not adequately developed in the state court proceedings and that further evidentiary development in the federal district court is necessary to resolve this issue.

HATCHETT, Circuit Judge, with whom CLARK, Circuit Judge, joins, dissenting:

The majority holds that (1) the trial court failed to deny Birt his right to counsel of choice, and (2) Birt was not denied effective assistance of counsel. Finding no ineffective assistance, the majority failed to address the merits of Birt's traverse jury challenge. I disagree with the majority's holding in the

31. We reiterate that we decline to express any opinion as to whether there is "actual prejudice" when an unconstitutionally composed jury pool is allegedly "cured" by the happenstance selection of a fair cross-section on the actual jury. *See supra* note 23. We hold only that Collins' trial strategy was reasonable under the totality of the circumstances here when his strategy concerned both the jury composition and the pretrial publicity, when he had an opportunity to foresee the potential prejudice by viewing the age, race and sex of the potential jurors before the time expired for filing a direct challenge to the composition of the array, and when his strategy included an intention to pursue the different change of venue challenge if he were not satisfied with the composition of the 12 jurors actually selected. *See supra* note 27.

32. At his state habeas proceeding, Birt presented the testimony of a sociologist, Dr. John L. Curtis, who testified on the results of a study

he had conducted in three south Georgia counties. Those results, although far from conclusive and not derived from Jefferson County, were offered to show that white males tended to be more willing to convict and sentence in capital cases than are blacks and women.

33. Indeed, without endorsing Collins' failure to investigate fully the relevant demographic statistics for a jury pool challenge, we note that his overall strategy regarding a jury challenge worked rather well. His agreement with the State to defer argument on the change of venue motion enabled Collins to evaluate the actual jury selected before making a final decision whether to pursue the challenge. Moreover, the use of a change of venue motion instead of a direct challenge to the jury may have avoided alerting the prosecution to Collins' preference for blacks and women and thus avoided any encouragement for the prosecution to use its peremptory challenges to strike women and blacks from the jury.

above two claims. Consequently, I address the merits of the jury challenge claim.

## COUNSEL OF CHOICE

The majority dismisses Birt's right to counsel of choice claim by analyzing it as simply a motion for continuance in order to obtain a new lawyer. This analysis is clearly wrong in light of the fact that Birt never filed a motion for a continuance. The real issues are whether Birt waived his constitutional right to counsel of his choice and whether an evidentiary hearing is necessary to resolve that issue.

The sixth amendment, while not providing an absolute right, guarantees a defendant a fair opportunity to secure counsel of his choice. *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932). The facts in this case show that the state trial court may have failed to afford Birt counsel of his choice.

Approximately three months before his arraignment, while incarcerated in a federal prison in Marion, Illinois, Birt notified the lawyer appointed by the Superior Court of Jefferson County, Georgia, that he wished to hire his own lawyer. At his arraignment, Birt continued his objection to Collins, the appointed counsel, and informed the court that, given the opportunity to speak with his wife, he would hire a lawyer. Birt stated time and again his objection to having Collins as appointed counsel. Birt and his family succeeded in obtaining a private lawyer, Eugene Reeves, to repre-

sent him at the upcoming trial. Reeves, Birt, and Collins, the appointed counsel, met for the first time at the Richmond County Jail on Sunday night, June 22, 1975, with the trial scheduled to begin the next morning.[1]

At the state habeas corpus hearing, Collins testified that Birt had decided to retain both lawyers. Birt testified to the contrary claiming he only desired Reeves to represent him at trial. Trial proceeded with Birt represented by both Collins and Reeves.[2] Reeves never testified concerning the Sunday night conversations and events in the jail on June 22, 1975. Yet, the state habeas corpus court found that Birt had voluntarily accepted the assistance of both Collins and Reeves, thereby waiving his right to counsel of his choice. This finding was affirmed on appeal in the state courts. The district court presumed the factual findings entered by the state habeas corpus court to be correct and denied Birt an evidentiary hearing on his constitutional claim. The majority affirms this conclusion despite the absence of the critical witness, Reeves.

In *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), the Supreme Court delineated six situations where a federal evidentiary hearing is required even though a state court has previously entered factual findings.[3] The fifth circumstance occurs when "the material facts were not adequately developed at the state court

---

1. The fact that the lawyers met for the first time on the eve of trial should point to the absolute need to hear the testimony of Reeves, not only on the choice of counsel issue but also on the state of preparedness of both lawyers.

 Few experienced trial judges or lawyers would assert that two lawyers could adequately review evidence, determine their respective roles at trial, agree on instructions to the jury, decide upon cross-examination approaches, discuss direct examination approaches, and agree upon direct witnesses for the penalty phase of the trial in a couple of hours.

 It is also inconceivable that neither lawyer, especially Reeves, never sought a continuance.

2. The record indicates that Birt would send one lawyer out of the room while he discussed the representation matter with the other.

3. The court stated:

 A federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: if (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.

 *Townsend*, 372 U.S. at 313, 83 S.Ct. at 757.

hearing." [4] 372 U.S. at 313, 83 S.Ct. at 757, *Coleman v. Zant,* 708 F.2d 541, 545 (11th Cir.1983). To compel the district court to hold an evidentiary hearing based on the fifth circumstance, the petitioner must show the existence of two elements: "First, a fact pertaining to his federal constitutional claim was not adequately developed at the state court hearing and that the fact was 'material' ... and second, that failure to develop that material fact at the state proceeding was not attributable to petitioner's inexcusable neglect or deliberate bypass." *Ross v. Hopper,* 716 F.2d 1528, 1534–35 (11th Cir.1983); *Thomas v. Zant,* 697 F.2d 977, 986 (11th Cir.1983).

Birt has proved that material facts concerning his right to choice of counsel were not adequately developed in the state court proceedings. The primary issue is whether Birt waived his right to choice of counsel by failing to continue to voice his objection to both the retained lawyer and the court appointed lawyer representing him at trial. The only way to resolve this dispute is to elicit Reeves's testimony concerning the conversation at the jail on June 22, 1975. The only evidence introduced at the state habeas corpus hearing was the contradictory testimony of Birt and Collins. Birt was unable to compel Reeves to attend the hearing and testify. The majority bases its holding that Birt waived his constitutional right upon a swearing match between Birt, a convicted felon, and Collins, his appointed lawyer and a former district attorney charged in Birt's petition with rendering ineffective assistance of counsel. It is not difficult to imagine who would win the swearing match. Clearly, further evidentiary development in federal court is necessary to resolve this issue. *Isaacs v. Zant,* 709 F.2d 634, 635 n. 2 (11th Cir.1983).

Birt has also demonstrated that the failure to develop these material facts was not attributable to his inexcusable neglect or deliberate bypass. Birt could not have compelled Reeves to attend the state habeas corpus hearing because of the Georgia Statute restricting the enforcement of subpoenas to 150 miles from the courthouse where the habeas corpus proceeding was held. Ga.Code Ann. § 38–801(e) (revised and recodified at 24–10–21 1982).[5]

Reeves's residence in Lawrenceville, Georgia, is more than 150 miles from Tattnell County, Georgia, where the state habeas corpus hearing was held. Consequently, Reeves was outside the range of an enforceable subpoena. In *Coleman v. Zant,* 708 F.2d 541 (11th Cir.1983), this court stated that section 38–801(e) was a valid reason for the defendant's failure to produce live witnesses. 708 F.2d at 548. Moreover, Birt's ability to compel Reeves to file sworn affidavits or written interrogatories cannot be regarded as inexcusable neglect, because in *Coleman v. Zant,* the Eleventh Circuit held a defendant's failure to file such affidavits or interrogatories did not constitute inexcusable neglect or deliberate bypass. 708 F.2d at 545. In this case, the majority not only fails to overrule that precedent; it simply ignores it.

Therefore, having satisfied both elements of the *Townsend* standard, Birt is entitled to an evidentiary hearing on the choice of counsel issue. Without Reeves's testimony, the issue will never be fully developed. Birt will be executed without any judge, state or federal, learning what took place when two lawyers (one wanted, the other unwanted) met for a few minutes to prepare to save a man's life.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The majority rightly says that we must look to the totality of the circumstances in order to determine whether counsel was

---

4. The sixth circumstance enunciated in *Townsend* was utilized by the panel in deciding Birt was entitled to an evidentiary hearing on his constitutional claims. *Birt v. Montgomery,* 709 F.2d 690, 696 (11th Cir.), *vacated, Birt v. Montgomery,* No. 82–8156 (11th Cir.1983). The absence of Reeves from the state habeas hearing entitled Birt to a hearing on either ground.

5. Georgia Code Annotated § 38–801(e) was amended in 1980 to provide for statewide service of subpoenas. Acts 1980, pages 70–71.

ineffective. While it is true that Birt challenges his counsel's representation in only one aspect, to wit: counsel failed to challenge the traverse jury pools, this aspect of Collins's representation encompasses the whole of his ability to adequately represent his client. Counsel may have made a tactical decision not to challenge the traverse jury pool. Yet, counsel is ineffective in this case because his failure to investigate facts crucial to that issue rendered whatever investigation he may have performed and whatever tactical decision he made subject to his greater lack of substantive knowledge.

At the heart of any effective representation is the independent duty of counsel to investigate and prepare. *Goodwin v. Balkcom,* 684 F.2d 794, 805 (11th Cir.1982). Collins could not investigate properly where he lacked the rudimentary knowledge of basic statistical figures regarding the traverse jury pool composition. Collins admitted his lack of knowledge in this matter. The Georgia Supreme Court made a factual finding that Collins "did not know the racial composition of the county." *Birt v. Hopper,* 245 Ga. 221, 224, 265 S.E.2d 276, 278 (Ga.1980).

Since Collins could not intelligently investigate the factual basis for a traverse jury pool challenge, it is inconceivable that he could challenge the constitutionality of the traverse jury pool successfully. He lacked the ability to attempt such a challenge since he lacked the statistical knowledge upon which such a challenge rests.

In addition, even when told by persons responsible for filling the jury wheel that it was being filled by the addition of persons selected because they were friends, Collins

failed to realize the constitutional significance of this information.

The definition of effective assistance of counsel, sufficient to satisfy the sixth amendment, is counsel "reasonably likely to render *and rendering* reasonable assistance . . . ." *Washington v. Strickland,* 693 F.2d at 1243, 1250 (5th Cir. Unit B 1982) (emphasis added). *See Scott v. Wainwright,* 698 F.2d 427, 429–30 (11th Cir.1983) (counsel is ineffective where he failed to familiarize himself with the facts and relevant law); *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir.1981), *cert. denied,* 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982) (counsel must be familiar with the facts and the law in order to competently advise the defendant).

In this instance, Collins knew and recognized that the traverse jury pool was unconstitutionally composed. Collins testified that he was aware of a successful challenge to the composition of the traverse jury pool just a few months prior to the Birt trial. Collins testified that he planned to pursue a change of venue motion in the event the selected jury mirrored what he knew to be the unconstitutional composition of the traverse jury. We will address this matter further in the dissent.

In order to prevail after a finding of ineffective counsel, a claimant must also show prejudice, to wit: that counsel's ineffectiveness resulted in actual and substantial disadvantage to the course of his defense. *Washington v. Strickland,* 693 F.2d at 1262. The majority intimates that Birt has been unable to establish prejudice because the jury selected for his trial was composed of a less constitutionally egregious mix of individuals than that mix found in the traverse jury pool.[6] This view

---

**6.** We note that neither the majority nor any of the parties argue that the trial jury, composed of four blacks and six women, meets the statistical proportions of those respective segments of the population at the time of trial. (Blacks composed 54.5% of the population; women composed 52.5% of the population. Women constituted 50% of the trial jury, however, and blacks constituted 33.3% of the jury.) Although the trial jury's composition is closer to the actual proportional population figures than

the traverse jury from which the jury was selected, we note that blacks were still underrepresented by over 20%.

The majority also suggests that Collins "gambled" on getting a jury he liked, rather than challenge the jury pool pre-trial. In light of the fact that the jury challenge is subjected to a cause and prejudice finding if not made pre-trial, it is a gamble that must lead to a finding of ineffectiveness of counsel.

by the majority seems to suggest that a constitutional violation regarding a jury pool may be "cured" by subsequent happenchance. The constitutional violation occurred with the composition of a traverse jury pool which substantially underrepresented blacks and women. *See Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). The violations cannot be subsequently "cured" through the selection of a more representative jury due to luck. This holding by the majority is probably the most serious undermining of basic and well established constitutional law to be announced by the Eleventh Circuit. It is totally unsupported. It renders moot a constitutional challenge essential to the fair administration of justice.

In determining prejudice, we should look only to whether counsel's ineffectiveness has resulted in actual disadvantage to the defendant's case, not to whether that disadvantage has been altered by subsequent facts. Counsel's failure to investigate the facts and the correct constitutional standards for traverse juries of necessity results in actual disadvantage to the course of a trial. Accordingly, I would find that Birt's counsel was ineffective, and that Birt was prejudiced by that ineffectiveness.

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Court held that where a state possesses a contemporaneous objection law a defendant is precluded from bringing his claim in the absence of a showing of both cause and prejudice. Ga.Code Ann. § 50–127(1) (recodified at § 9–14–42(b)) states that a defendant waives his right to object to the composition of a traverse jury pool unless he can show in his petition for relief that cause exists for his being allowed to pursue the objection after his conviction. I find that Collins's ineffective assistance constitutes cause sufficient to satisfy the *Wainwright*

test. I also find that Collins's failure to investigate the facts and correct constitutional standards for traverse juries resulted in actual disadvantage to the course of Birt's trial, satisfying the prejudice requirement. The *Wainwright v. Sykes* test having been satisfied, the merits of Birt's jury composition claim may be reviewed.

## JURY COMPOSITION

Birt claims that the traverse jury pool from which his trial jury was selected substantially underrepresented blacks and women by percentages violative of both the sixth amendment right to a jury selected from a fair cross-section of the community and the fourteenth amendment guarantee of equal protection.

"Both in the course of exercising its supervisory powers over trials in federal courts and in the constitutional context, the court has unambiguously declared that the American concept of a jury trial contemplates a jury drawn from a fair cross-section of the community." *Taylor v. Louisiana,* 419 U.S. at 526–27, 95 S.Ct. at 696. The *Taylor* Court stressed that the selection of a petit jury from a representative cross-section of the community is an essential component of a sixth amendment right to a jury trial. Criminal defendants in state courts may also challenge discriminatory selections of grand and petit juries through the equal protection clause of the fourteenth amendment. *Alexander v. Louisiana,* 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *United States v. Perez-Hernandez,* 672 F.2d 1380 (11th Cir.1982).

Birt, a white male, claims that the traverse jury pool from which his trial jury was selected substantially underrepresented blacks and women by percentages violative of his sixth amendment right to a jury selected from a fair cross-section of the community. Birt has standing to bring this claim. "Taylor was not a member of the

---

The majority also suggests that the failure to challenge the jury pool is somehow related to the motion for change of venue. They are unrelated principles. One concerns itself with

having a proper jury selected, the other concerns itself with what the properly selected jurors know about the facts of the case.

excluded class; but there is no rule that claims such as Taylor presents may be made only by those defendants who are members of the group excluded from jury service." *Taylor* 419 U.S. at 526, 95 S.Ct. at 695.

The requirements for a prima facie violation of the fair cross-section requirement of the sixth amendment were set down by the Supreme Court in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to a systematic exclusion of the group in the jury selection process.

Both *Taylor* and *Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940), emphasized that women and blacks respectively are distinctive groups in the community. As such, Birt's allegation that the traverse jury pool substantially underrepresented blacks and women satisfies the first requirement in the test for a sixth amendment fair cross-section violation.

Census figures reveal that blacks represented 54.5% of the Jefferson County population and that women represented 52.5%. The traverse jury pool consisted of 21.6% blacks and 34.9% women. The statistics show an underrepresentation in the June, 1975, list of 32.9% for blacks and 17.6% for women. Birt has satisfied the second requirement in finding a sixth amendment violation. The representation of blacks and women in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community. The percentage disparities are sufficiently disproportionate to fall within the approximate boundaries delineated in other cases. *Turner v. Fouche,* 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 532 (1970) (23%); *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954) (14%); *Preston v. Mandeville,* 428 F.2d 1392 (5th Cir. 1970) (13.3%).

The underrepresentation of blacks and women on Jefferson County traverse jury pools over a period of time indicates systematic exclusion of these two groups. In the September, 1970, pool, the statistical disparity for blacks was 42.7%, for women 50.7%. In the January, 1972, pool, the disparity for blacks was 42.5%; the disparity for women was 49.2%. In the March, 1975, pool, the disparity for blacks was 40%; the disparity for women was 47.7%. Birt has thus satisfied the third and final requirement of a prima facie violation of the sixth amendment right to a fair cross-section.

Since Birt has made out a prima facie showing of an infringement of his sixth amendment right to a jury drawn from a fair cross-section of the community, the state bears the burden of justifying this infringement by showing that attainment of a fair cross-section is incompatible with a significant state interest. *Duren,* 439 U.S. at 367, 99 S.Ct. at 670. The State of Georgia has offered no evidence to justify this infringement. Birt's right to a jury selected from a fair cross-section of the community was violated when his trial jury was selected from a traverse jury pool which substantially underrepresented blacks and women.

Birt also alleges that the underrepresentation of blacks and women on the traverse jury pool was violative of the fourteenth amendment guarantee of equal protection. Thus, in order to show that an equal protection violation has occurred in the context of grand jury selection, the defendant must show that the procedure employed resulted in substantial underrepresentation of his race or of the identifiable group to which he belongs. The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws as written or as applied. *Hernandez v. Texas,* 347 U.S. at 478–79, 98 L.Ed. 866, 74 S.Ct. 667 [at 670–71]. Next, the degree of underrepresentation must be proved by comparing the proportion of

the group in the total population to the proportion called to serve as grand jurors, over a significant period of time. *Id.,* at 480, 98 L.Ed. 866, 74 S.Ct. 667 [at 671]. *See Norris v. Alabama,* 294 U.S. 587, 79 L.Ed. 1074, 55 S.Ct. 579 [(1935)]. . . . Finally, as noted above, a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. *Washington v. Davis,* 426 U.S. at 241, 48 L.Ed.2d 597, 96 S.Ct. 2040 [at 2048]; *Alexander v. Louisiana,* 405 U.S. at 630, 31 L.Ed.2d 536, 92 S.Ct. 1221 [at 1225]. Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the state to rebut that case.

*Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). The *Castaneda* decision established the guidelines for proving a case of jury discrimination. *United States ex rel. Barksdale v. Blackburn,* 639 F.2d 1115, 1132 (5th Cir.1981) (en banc). The courts apply the above-stated equal protection test in cases involving both grand jury and petit jury discriminatory selection practices. *Gibson v. Zant,* 705 F.2d 1543, 1546 (11th Cir.1983).

The Eleventh Circuit has held that a white male can bring a claim of denial of equal protection in the exclusion of blacks and women from serving as grand jury foremen, even though he is neither black nor female. *United States v. Cross,* 708 F.2d 631 (11th Cir.1983). Birt, a white male, thus has standing to bring his claim that the traverse jury pool, in substantially underrepresenting blacks and women, violated the fourteenth amendment guarantee of equal protection.

Birt, as earlier detailed, has satisfied the first two steps in the *Castaneda* test for finding an equal protection violation. Birt has identified two distinct classes—women and blacks. Birt has shown a significant underrepresentation of blacks and women in the traverse jury pool.

Testimony of Jefferson County jury commissioners at the state habeas corpus hearing reveal that potential jurors were occa-sionally selected by accepting or rejecting names on the county voter registration lists based upon the commissioner's personal knowledge of the individuals or their family background. Commissioner McGahee explained the process by which the jury lists were revised to remedy underrepresentation:

> We took the voter registration list and went right back over it like we did before and just added, tried in our own mind of the people that we knew from the districts that we had to uh, to put what we thought would be an average pro rata share and I thought of blacks, females and teenagers, with no, no given percentage in mind . . . . Well from the voter registration lists what we had, we picked people that we though [sic] were suitable and would do a good job as a juror.

*Castaneda,* 430 U.S. at 512, 97 S.Ct. at 1289; *Turner,* 396 U.S. at 356, 90 S.Ct. at 538. For purposes of the third requirement for an equal protection violation, the subjective judgments of the Jefferson County jury commissioners clearly render the method of selection susceptible to possible abuse.

Birt has clearly established a prima facie case of an equal protection violation. The State of Georgia has offered no evidence in rebuttal. As such, it is clear that the substantial underrepresentation of blacks and women in the traverse jury pool was a violation of the fourteenth amendment guarantee of equal protection.

The substantial underrepresentation of blacks and women in the jury pools from which Birt's trial jury was selected violates his sixth amendment right to a jury pool selected from a fair cross-section of the community and his fourteenth amendment guarantee of equal protection.

We clearly find support in the record for finding this constitutional violation. At the least, the majority should find cause and remand this case to the district court for an evidentiary hearing.

TUTTLE, Senior Circuit Judge, dissenting:

I concur in the results stated in Judge Hatchett's dissent and the text of his opin-

ion except as to the matter discussed in fn. 18 of the majority opinion. As to that issue, I dissent from the majority's holding that because of the assumed facts, the proposed testimony of Reeves was not "material."